[No. 11108.   Department Two.—December 31, 1886.]

## JACOB MYERS, APPELLANT, *v.* D. L. MOULTON ET AL., RESPONDENTS.

PARTNERSHIP — SALE OF ENTIRE FIRM ASSETS — STALLION IS NOT MERCHANDISE. — A stallion owned by partners engaged in the business of stock-raising, and kept for breeding purposes, is not merchandise within the meaning of section 2430 of the Civil Code, preventing one partner from disposing of the whole of the partnership property at once, unless it consists entirely of merchandise.

ID. — SALE OF INTEREST BY PARTNER — COPARTNER NOT DIVESTED OF RIGHT OF POSSESSION. — One partner cannot by a sale of his interest in the partnership property deprive his copartner of the right of possession thereto.

ID. — BILL OF SALE — PLEDGE — CONDITIONAL OFFER OF — PAYMENT — JUDGMENT — PRESUMPTION. — The stallion in question was sold by the plaintiff to one Alexander, who subsequently gave a bill of sale for certain horses to the defendant Bonyman as security for a loan. The evidence tended to show that the stallion was intended to be included in the bill of sale. Thereafter, the plaintiff repurchased the stallion from Alexander, and delivered it into the possession of Bonyman. At some time, — it does not appear when, — Alexander offered to pay his indebtedness to Bonyman on certain conditions which the latter was not bound to per-

form, but did not in fact pay it. The action was brought to recover pos-
session of the stallion. Judgment was rendered in favor of the defend-
ants. *Held,* that it would be presumed in support of the judgment that
the stallion was included in the bill of sale.

ID. — LIEN OF PLEDGEE — RELEASE OF. — *Held further,* that upon the deliv-
ery of the stallion to Bonyman, his lien thereon created by the bill of sale
at once attached, and was not released by the conditional offer of pay-
ment made by Alexander.

CLAIM AND DELIVERY — JOINT ACTION — DEFENDANTS ANSWERING SEPA-
RATELY — JOINT JUDGMENT. — In an action of claim and delivery
against defendants who are sued jointly, a joint judgment in their
favor is not erroneous, although each of the defendants answered sepa-
rately.

ID. — JUDGMENT FOR DEFENDANT — VALUE OF PROPERTY. — In such an
action, where the property sued for is delivered to the plaintiff at the
commencement of the action, the judgment, if in favor of the defend-
ants, may provide for a return of the property, or the value thereof in
case a return cannot be had.

APPEAL from a judgment of the Superior Court of
Lassen County, and from an order refusing a new trial.

The facts are stated in the opinion.

*E. V. Spencer,* for Appellant.

*A. L. Shinn,* and *Goodwin & Davis,* for Respondents.

BELCHER, C. C.—This action was brought to recover
from the defendants the possession or value of a wagon,
set of double harness, and a horse.

At the commencement of the action the plaintiff
claimed a delivery of the property to himself, and by
proper proceedings took it from the defendants. The
defendants answered separately, each admitting that he
was in possession of the property when the action was
commenced, and denying all the other allegations of the
complaint, and then, averring the value of the property,
and that it had been taken from him, demanded judg-
ment for its return.

After trial the court below found that the plaintiff
was the owner and entitled to the possession of the
wagon and set of harness, and that he was not the owner

or entitled to the possession of the horse, but the defendants were lawfully in its possession, and as against plaintiff, entitled to its possession.

Judgment was then entered that the defendants have a return of the horse, with damages in the sum of one dollar for its detention, and their costs, or in case a return could not be had, that they recover from the plaintiff its value fixed at six hundred dollars.

The plaintiff moved for a new trial, and his motion being denied, appealed from the judgment and order.

It appears from the evidence that the plaintiff and the wife of defendant Moulton were partners engaged in the business of stock-raising upon a ranch owned by them in Lassen County. They owned, in equal shares, a large band of horses, and also the horse in question, which was a stallion, known as J. W. Mackay, and was kept upon the ranch for breeding purposes. Defendant Moulton lived upon the ranch and took charge of the business and property for his wife. About the 1st of January, 1884, the horse was pledged to one Frank Horn to secure the payment of a sum of money borrowed for ranch purposes. Horn took and held possession of the horse till some time in the month of June following. On the 7th of June, 1884, plaintiff made a bill of sale which reads as follows:—

"MADELINE PLAINS, LASSEN COUNTY, CAL.

"MOULTON & MYERS'S RANCH, June 7, 1884.

"Know all men by these presents, that I, Jacob Myers, party of the first part, do sell all my real and personal property, located in Lassen County, California, to John T. Alexander and J. C. Frazer, of the same county and state, for the sum of three thousand dollars, gold coin of the United States, for value received, the receipt of which is hereby acknowledged.

(Signed)        "JACOB MYERS."

On the 11th of June, 1884, Alexander, the grantee in the Myers bill of sale, executed a bill of sale to the

defendant Bonyman, by which he bargained and sold "to E. Bonyman seventy head of horses, more or less, wagons, hay-rake, mowing-machine, harness, stove, cooking utensils, all the hay on the land, and all appurtenances remaining on hand on the Myers & Moulton ranch, situate on the Madeline Plains, for the sum of four hundred dollars, cash in hand paid."

This last bill of sale was given to secure the payment of four hundred dollars, which Alexander borrowed of Bonyman, and for which he gave his promissory note.

The plaintiff afterward bought the horse back from Alexander, and then, with his individual money, paid to Horn the sum of three hundred dollars, to secure the payment of which, the horse was held by him in pledge.

On redeeming the horse, plaintiff directed that he be delivered into the possession of defendant Bonyman, who was then with Moulton, upon the Moulton & Myers ranch, and he was so delivered on the twenty-sixth day of June.

At some time,—it does not appear when,—Alexander offered to pay the note given by him to Bonyman, if certain horses that had been driven away were returned, but he did not in fact pay it, or tender any money to pay it.

Moulton and Bonyman remained on the ranch, and retained possession of the horse until this action was commenced, on the twenty-eighth day of November, 1884.

It is argued for appellant that when Myers made his bill of sale, on the 7th of June, he transferred the entire interest of Moulton & Myers in the horse and other property of the firm, and the partnership was thereby dissolved, and that when he bought the horse back from Alexander he became its sole owner, subject only to the lien of Horn.

This claim cannot be maintained. "Every general partner is agent for the partnership in the transaction

of its business, and has authority to do whatever is necessary to carry on such business in the ordinary manner, and for this purpose may bind his copartners by an agreement in writing " (Civ. Code, sec. 2429); but a partner, as such, has no authority " to dispose of the whole of the partnership property at once, unless it consists entirely of merchandise." (Civ. Code, sec. 2430, subd. 3.)

The words used in the bill of sale are, " do sell all my real and personal property." This language does not purport to transfer the interest of the seller's copartner, and if it did, it is clear that he had no power to transfer it. The horse was a stallion, kept and used for breeding purposes, and its sale was not necessary to carry on the business of the firm in the ordinary manner; and besides, it was not merchandise within the meaning of that word as used in ·the subdivision above quoted from the Civil Code.

It must follow that, notwithstanding the bill of sale, Mrs. Moulton remained the owner of an undivided half-interest in the horse, and as such owner had the same right to its possession as her co-owner.

When, therefore, the plaintiff bought the horse back from Alexander, he bought only the half-interest which he had sold, and that half-interest was subject to any valid liens created upon it while Alexander held the title.

It is also argued that Bonyman acquired no interest in the horse by his bill of sale from Alexander, because the horse was not included in that bill of sale; and if it was included, that then his lien was released, and his interest divested, when Alexander offered to pay his note if the horses which had been driven away were returned.

The answer to this is: 1. That the testimony tends to show that the horse was intended to be and was included in the bill of sale, and in support of the judgment, it must be presumed that the court so found; and 2. When the horse was delivered into the possession of

Bonyman the lien upon a half-interest in him, created by the bill of sale, at once attached, and that lien was not released by an offer from Alexander to pay his note, on conditions which, so far as we are advised, Bonyman was not bound to perform. (Civ. Code, sec. 1494.)

This must be so, for the reason that it does not appear from the record what horses, if any, had been driven away, where they were driven to, who drove them, or under what circumstances or claim of right it was done. It may be that they were taken by Mrs. Moulton, the owner of the other undivided half-interest in them, and if so, she had a right to their possession. It cannot be said, therefore, that Bonyman was bound to return them.

The case then is this: When the action was brought the horse was upon the Moulton & Myers ranch, in possession of the defendants Moulton and Bonyman. Mrs. Moulton owned one half of the horse, and her husband held possession for her. Bonyman had the other half in pledge, and as pledgee also held possession. Plaintiff demanded that the horse be given over into his exclusive possession, and the defendants refused to comply with this demand.

The question is, Were they justified in their refusal? The court below thought they were, and to us its conclusions seem correct. Certainly the plaintiff could not have taken the horse from Mrs. Moulton, his co-owner; and as her husband held for her, his possession was her possession. So the plaintiff had no right to take the horse from Bonyman, so long as he held it under a valid pledge.

But it is said the judgment was a joint one, and erroneous for that reason. The defendants were sued jointly, and though they answered separately, we see no error in entering a joint judgment in their favor.

It is further said that the judgment is erroneous because it awards to the defendants the value of the horse

in case a return thereof cannot be had. They alleged and the court found the value of the horse, and that it was taken from them at the commencement of the action. They prayed only for its return. This was sufficient to justify the judgment entered.

The code provides: "If the property has been delivered to the plaintiff, and the defendant claims a return thereof, judgment for the defendant may be for a return of the property, or the value thereof in case a return cannot be had, and damages for taking and withholding the same." (Code Civ. Proc., sec. 667.)

We find no error in the record, and the judgment and order should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT.—For the reason given in the foregoing opinion, the judgment and order are affirmed.