THOMAS REEVES, DEFENDANT IN ERROR, v. JAMES S. HANNAN, PLAINTIFF IN ERROR.

Submitted July 9, 1900—Decided November 19, 1900.

H. entered into an agreement with R., by which he demised to the latter a certain farm for a specified term, giving to him the exclusive occupation thereof, and reserving as rent one-half of the crops grown thereon. By the provisions of the agreement R. was prohibited from underletting the premises or assigning "the lease," and was required to keep the premises in repair during the continuance of the term, and surrender possession thereof to H. at its expiration. *Held*, that such an agreement was not a mere contract to work the farm upon shares, constituting the owner and the occupant tenants in common of the crops produced, but was a lease of the farm, creating the relationship of landlord and tenant; *held further*, that by virtue of such agreement the title to the crops produced vested in R., as tenant, and that H. had no claim upon them until a division was made; *held further*, that R. had a.right. after the expiration of his .term, to enter upon the demised premises and cut and remove the way-growing crop.

---

On error to the Cumberland Circuit. .

For the plaintiff in error, *Walter H. Bacon.*

For the defendant in error, *James S. Ware.*

The opinion of the court was delivered by

GUMMERE, J. On March 21st, 1895, Hannan, the plaintiff in error, who was the owner of a farm in Cumberland county, entered into an agreement, under seal, with Reeves, the defendant in error, by which he did "demise, grant and farm

let" said farm to the latter for the term of one year from the 25th day of said month of March, the latter agreeing to pay or yield therefor "two extra loads of hay (which the said Hannan reserves for his own use), one-half of the proceeds of all hay sold, and also one-half of all potatoes and crops grown on the farm." Hannan also agreed that Reeves should have exclusive occupation of the premises, and the latter agreed to keep them and the buildings thereon in good repair, to fertilize and till the land, sow and plant seed, harvest and gather crops in season, and farm the land in a good and farmerlike manner. He further agreed that he would "not under-lease or rent the said premises, or any part thereof, nor assign over this lease, without permission of the lessor or his representatives;" and that he would "at the expiration of the term yield up the said premises * * * unto the said lessor, or his lawful representatives." By the provisions of the agreement, each party was to pay for one-half of the seed and fertilizers, and the toll for threshing the grain was, in all cases, to be paid before the crop was divided.

Reeves entered into possession under this agreement and cultivated the farm for the ensuing year. At the expiration of that period, by mutual arrangement, the term of the agreement was extended for two years further, during which period Reeves continued in possession and farmed the land. At the end of the third year Reeves vacated the premises, leaving the winter wheat crop growing thereon. When this crop was ready for harvest it was cut by Hannan, against the protest of Reeves, and stored by the former in a barn upon the premises, the building being then nailed up and the doors locked. Reeves thereupon brought this action to recover possession of the wheat so harvested, and there was a verdict in his favor and judgment thereon.

The principal assignment of error involves the construction of the agreement of March 21st, 1895, and the rights of the parties under it. The contention, on behalf of the plaintiff in error, is that it is not a lease, but a mere contract to work the farm upon shares, by which the defendant in error became the employe of the plaintiff in error, and entitled

to one-half of the crops as compensation for his labor done upon the farm.

If this is the true construction of the contract, the judgment under review should be reversed, for the effect of such an agreement is to constitute the parties to it tenants in common of the growing crops, their joint interests continuing until an actual severance by a division (*Guest* v. *Opdyke,* 2 *Vroom* 552; *Edgar* v. *Jewell,* 5 *Id.* 259), and, being tenants in common of the crops, neither could maintain replevin therefor against the other. *Hunt* v. *Chambers.* 1 *Zab.* 620.

But the contention of the plaintiff in error that this instrument is not a lease is untenable. Although, as is said by this court in *New Jersey Midland Railway Co.* v. *Van Syckel,* 8 *Vroom* 496, there is much apparent conflict in the cases, in deciding what is the true relation of the owner and the occupant of lands, where the crops are to be divided between them, in shares or proportions, as they are gathered, yet an examination of the various decisions will show that they usually turn upon the language of the contract. Where the contract is manifestly for work and labor, and a share of the crops is given for such services, it should be construed not to create the relation of landlord and tenant; but where it is in form a lease, containing terms of demise, and reserving rent in kind, it should be given effect according to the expressed intention of the parties, and held to create that relationship.

Tested by the rule laid down in the case cited, it is apparent that the instrument in question is a lease, not a contract for work and labor. It contains words of demise; reserves rent; gives exclusive occupation of the premises to the tenant, during the term; prohibits underletting, or an assignment of the lease; requires the tenant to keep the premises in repair during the continuance of the term, and to deliver up possession at its expiration.

The agreement of March 21st, 1895, being a lease, the title of the crops produced did not vest in the parties to it as tenants in common, but solely in Reeves, the tenant; and Hannan, the landlord, had no claim upon them until an

actual division was made, and his share was turned over to him as a *reditus* or rent. *Guest* v. *Opdyke, supra.* 554. And this is so, not only as to the crops harvested during the continuance of the term, but also as to way-growing crops, which, at the expiration of the term, had not ripened sufficiently to be ready for reaping. As to such crops it is entirely settled in this state that a tenant has a right, after the expiration of his term, to enter upon the demised premises, when the time for harvesting has arrived, and cut and carry them away. *Van Doren* v. *Everitt,* 2 *South.* 460; *Howell* v. *Schenck,* 4 *Zab.* 89; *Corle* v. *Monkhouse,* 2 *Dick. Ch. Rep.* 73.

Two other errors are assigned, but we find them to be without merit.

One of them relates to the alleged admission of testimony tending to show that the plaintiff in error cut the wheat, which is the subject of the replevin, while it was too green, thereby causing damage to the defendant in error. An examination of the bills of exceptions, however, discloses that, although two witnesses were asked whether the grain had not been cut while it was too green, and the questions were admitted over the objections of the plaintiff in error, yet no answers were given by either witness to the questions objected to.

The other assignment is based upon an alleged error of the court in refusing to admit testimony, offered by the plaintiff in error, for the purpose of showing that the defendant in error had, by his conduct as tenant, lost the right to return and harvest his way-growing crop. A recital of the excluded testimony would be of no value. It is sufficient to say that, in our judgment, it did not even tend to show the forfeiture of the tenant's right.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GUMMERE, COLLINS, FORT, GARRETSON, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 13.

*For reversal*—None.