## DE SPAIN v. COLEY.

No. 8151—Opinion Filed Dec. 12, 1916.

Rehearing Denied Jan. 30, 1917.

(162 Pac. 756.)

### Landlord and Tenant—Farm Leases—Right of Tenant.

Where a tenant grows a crop of wheat under a rental contract, providing that he shall pay a portion of the crop as rents, such rents to be delivered to the landlord at the thresher, the tenant has a right to the possession of the entire crop on the premises until the same is harvested and divided, and may maintain replevin for the possession of such wheat against any one wrongfully in possession of the same.

(Syllabus by Edwards, C.)

Error from District Court, Cotton County; Cham Jones, Judge.

Action by Otto Coley against S. L. De Spain. There was judgment for plaintiff, and defendant brings error. Affirmed.

W. O. Henderson and Austin Akin, for plaintiff in error.

Mounts & Davis, and Perry T. McVay, for defendant in error.

Opinion by EDWARDS, C. The parties will be referred to as plaintiff and defendant, according to their position in the lower court. This action was filed in the district court of Cotton county by the plaintiff, Otto Coley, to recover 75 acres of matured wheat, the petition being in the usual form, alleging that the plaintiff is the owner and entitled to immediate possession, and fixing the value at $1,500. The answer is a general denial. Upon the trial of the case the plaintiff presented evidence to the effect that the plaintiff rented the land on which the wheat was, raised from one Norvell, and paid said Norvell $40 for a part of the land already prepared for sowing, and agreed to pay as rents one-third of the grain at the thresher. The evidence further showed that Smith Price, a brother-in-law of plaintiff, was with him at the time he rented the land, assisted in sowing the wheat, and, in a measure, looked after the same for the plaintiff. The evidence also showed that a part of the wheat was resown, and in doing this Smith Price was assisted by Norvell, the owner of the land. The seed wheat for the second sowing was bought from one Mr. Ruke and a draft drawn on the plaintiff, Coley, to pay for same, and also to pay for the work of Norvell in reseeding. Plaintiff returned to the land in April, and learned that the defendant, De Spain, was claiming the wheat by purchase from Norvell. Plaintiff then informed the defendant that he had not sold the wheat nor authorized any one to sell it for him. Plaintiff returned in the early part of June, and was forbidden by the defendant to cut the wheat, and same was harvested by the defendant. Smith Price, the brother-in-law of plaintiff, testified substantially to the same effect as the plaintiff, and further testified that he never had any interest in the crop, that he had not sold the wheat to Norvell, and had never received any payment from Norvell for the wheat.

The evidence on the part of the defendant is that he bought the wheat from the owner of the land (Norvell), that he knew nothing about who put in the crop of wheat, and had fully paid for the same. The owner of the land (Norvell) testified that he rented the land to be sown in wheat to Smith Price, who informed him at the time that he would take Coley in as a partner; that he received a check for $40, signed by Coley, in payment for labor in preparing a portion of the land for wheat prior to the leasing; that later on part of the wheat was resown, and that upon the completion of the second sowing he bought the entire crop from Smith Price for the sum of $120; that this purchase payment was made on the day the second sowing was finished and the payment made in money at the house of the witness Norvell, and that no one was present except Smith Price and the said Norvell, and no receipt or memorandum made, and that he later sold the crop to the defendant.

In rebuttal the plaintiff offered the evidence of the wife of Smith Price, a sister of the plaintiff, that she was with her husband at the time he was at the place of Norvell upon the completion of the second sowing of the wheat, and that Smith Price was not in the house of Norvell on that occasion, and that nothing was said about selling the crop of wheat at that time. The witness Smith Price was recalled and testified to the same effect, and the witness D. A. Ruke testified that on that occasion he saw the wife of Smith Price going to the home of Norvell with her husband. The verdict of the jury was for the plaintiff.

The evidence for the plaintiff and the defendant in several material particulars is directly contradictory and incapable of being reconciled upon any theory which will give credence to the witnesses on each side. It is a physical impossibility for the testimony of both Smith Price and Norvell to be true, and it is impossible for them to be honestly mistaken; and either the testimony of Norvell that he bought the wheat from Price and paid $120 in cash therefor, or the testimony of Price that he did not sell the wheat to Norvell and did not receive any payment therefor, is a wicked and corrupt perjury. But this is purely an issue of fact, and was for the jury. They saw the witnesses, observed their demeanor and conduct on the stand, and drew their own conclusions, and their verdict in favor of the plaintiff will not be disturbed upon the weight of the evidence.

The defendant, however, contends, as a ground for reversal: First, that replevin will not lie for an undivided interest in personal property, citing numerous authorities; but this position is not tenable under the state of facts here developed. Wheat in the shock is subject to replevin. Cobbey on Replevin (2d Ed.) sec. 36. And where a tenant contracts to deliver a certain portion of the crop to the landlord as rent he is entitled to pos-

session of the entire crop in order that he may carry out his lease and effect a delivery to the landlord of one-third of the crop due him when threshed. In Cunningham v. Baker, 84 Ind. 597, the court held:

"Where, by the terms of a lease, the tenant is to thresh the wheat crop and deliver to the landlord a certain share in the bushel, the tenant has a right to possess the wheat for the purpose of performing his contract, and may maintain replevin therefor" even against the landlord.

See, also, Reeves v. Hannan, 65 N. J. Law, 249, 48 Atl. 1018; Mouser v. Davis, 9 Ohio Dec. (Reprint) 237; Kilpatrick v. Harper, 119 Ala. 452, 24 South. 715; Matlock v. Fry, 15 Ind. 483.

This court, in the case of Gvosdanovic v. Harris et al., 38 Okla. 787, 134 Pac. 28, in the third paragraph of the syllabus holds:

"Where a tenant cultivates and matures a crop of corn under a rental contract providing that he shall pay a portion of the crop as rents, and shall gather same and deliver to the landlord his rents at some place upon the premises, or at some other place, to be designated by him, the tenant has a right to the possession of the entire crop of corn until the same is gathered and divided, and can maintain replevin therefor."

In the body of the opinion the court cites numerous authorities in support of the holding.

The defendant further assigns as a ground for reversal the proposition that one partner cannot maintain replevin to recover possession of partnership property, on the theory that there is evidence that Price and Coley were partners, and that Norvell afterwards bought the crop from Price, a partner, and that Coley cannot thereafter replevin the wheat sold from the purchaser. Section 4448, Rev. Laws 1910, is as follows:

"4448. A partner, as such, has not authority to do any of the following acts, unless his co-partners have wholly abandoned the business to him, or are incapable of acting: * * * To dispose of the whole of the partnership property at once, unless it consists entirely of merchandise."

Under the theory of defendant it is not contended that Coley, as a partner of Price, who sold to Norvell, had abandoned or was incapable of acting. And it is not claimed that Price had any authority to dispose of the entire partnership property, and unless these facts exist, even under the theory of the defendant, the sale by Price to Norvell would convey only his interest in the property. There is evidence from the witness Norvell himself that he knew of the partnership agreement and the interest of Coley in the

wheat before he claims to have purchased from Price. Hence, if there was a partnership between Price and Coley the sale of the entire partnership property by Price was unauthorized. The Supreme Court of the territory of Oklahoma, in the case of Phillips v. Thorp, 12 Okla. 617, 73 Pac. 268, held:

"An unauthorized sale by one partner of all the partnership property conveys to the purchaser only the interest of the partner selling, where the purchaser had knowledge of the partnership interest, or of facts sufficient to put an ordinarily prudent man upon inquiry. The copartners in such case have a right to sue for and recover from such purchaser the value of their interest in the partnership property wrongfully converted to the use of such purchaser through such unauthorized sale."

And in a case where a partner, where his copartner has not abandoned the business nor is incapable of acting and the partnership is not dealing in merchandise, without authority sells all of the partnership property, the partnership is thereby terminated, and the surviving partner is entitled to the possession of the entire property. Harkey v. Tillman, 40 Ark. 551; Bostick v. Brittain, 25 Ark. 482; Miller v. Brigham, 50 Cal. 615; Horton's Appeal, 13 Pa. (1 Harris) 67; Smith v. Wood, 31 Md. 293; Myers v. Moulton, 71 Cal. 498, 12 Pac. 505. Compare section 2430, 2 Kerr's Cal. Codes, with section 4448, Rev. Laws Okla. 1910.

The jury, however, by their verdict, found that the plaintiff was the owner of two-thirds of the crop of wheat, this being all the interest of the lessee, the interest of the lessor being the remaining one-third, and hence found against the contention of the defendant that there was a partnership, and the verdict of the jury upon this point is conclusive.

The further contentions of the defendant are that the court erred in refusing to give certain requests for instructions. These instructions, in part, required that the plaintiff shall be the exclusive owner of the property before he is entitled to maintain the action in replevin, but this contention is not sound, for the reason that the right to possession might exist independent of the exclusive ownership, as held in the case of Gvosdanovic v. Harris et al., supra, wherein the landlord might be deemed to be the owner of a certain portion of the crop, and yet the tenant would be entitled to possession of the entire crop for the purpose of fulfilling the terms of his lease. Hence the requested instructions in which the jury are directed to return a verdict for the defendant, unless they find the plaintiff to be the exclusive owner, were er-

2—65

roneous, and properly refused by the court. The defendant also complains of certain instructions given to the jury, but we have carefully examined the charge of the court, and on the whole believe the issues were fairly submitted to the jury, and that there is no evidenec that would warrant a reversal.

The cause is affirmed.

By the Court: It is so ordered.