**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2506-15T2

CENTURY 21-MAIN STREET
REALTY, INC., a New Jersey
Corporation,

    Plaintiff-Appellant,

v.

ST. CECELIA'S CHURCH, ISELIN,
NEW JERSEY a/k/a ST. CECELIA'S
CATHOLIC CHURCH OF ISELIN a/k/a
ST. CECELIA'S R.C. CHURCH a/k/a
ST. CECELIA'S ROMAN CATHOLIC
CHURCH OF ISELIN, NEW JERSEY
a/k/a R.C. DIOCESE OF METUCHEN,

    Defendants-Respondents.

_____

        Argued February 14, 2017 — Decided September 6, 2017

        Before Judges Ostrer, Leone and Vernoia.

        On appeal from the Superior Court of New
        Jersey, Law Division, Middlesex County, Docket
        No. L-4635-15.

        David M. Hutt argued the cause for appellant
        (Hutt & Shimanowitz, PC, attorneys; Mr. Hutt
        and Bryan D. Plocker, of counsel and on the
        briefs).

        Nicholas J. Dimakos argued the cause for
        respondents (Norris McLaughlin & Marcus, PA,
        attorneys; David C. Roberts, of counsel and

on the brief; Bradford W. Muller, on the brief).

PER CURIAM

Plaintiff, Century 21-Main Street Realty, appeals from the trial court's order dismissing its complaint with prejudice for failure to state a claim upon which relief can be granted. R. 4:6-2(e). Century and defendant St. Cecelia's Church entered into a listing agreement for Century to assist in the sale, lease or rental of a school building in the Iselin section of Woodbridge Township. The Church ultimately entered into a no-rent lease with the Edison Board of Education. The lease obliged the Board to bear the cost of any improvements it deemed necessary. The costs turned out to be substantial. After the Church refused Century's demand for a commission based on the Board's expenditures, Century asserted claims of breach of contract and unjust enrichment.

The Church persuaded the trial court that the agreement's plain terms did not entitle Century to a commission on a rent-free lease. Based on the allegations of the complaint, we agree. But, we modify the dismissal order to provide that it is without prejudice to Century filing an amended complaint.

I.

We discern the following facts from the allegations in the complaint and the terms of the documents that the complaint

2

referenced, extending all favorable inferences to Century.  See Tisby v. Camden Cty. Corr. Facility, 448 N.J. Super. 241, 247-48 (App. Div.), certif. denied, ___ N.J. ___ (2017).

The May 21, 2012 exclusive listing agreement pertained to the Church's property at 1300 Oak Tree Road, Iselin, New Jersey, which the parties agree contained an inactive school building.  The parties extended the agreement's one-year term to June 30, 2014, without otherwise modifying it.  The agreement granted Century the exclusive right, on the Church's behalf, to sell the property,[1] or "to lease or rent the property at a monthly rate of $25 sq. ft. . . . ."  (Emphasis added on the handwritten provisions).  The agreement acknowledged the terms of Century's commission was a product of their agreement, and not any governmental authority or listing service:

> 3. COMMISSION ON SALE, LEASE OR RENT, OR EXCHANGE:
>
> AS SELLERS OR LANDLORDS, YOU HAVE THE RIGHT TO INDIVIDUALLY REACH AN AGREEMENT ON ANY FEE, COMMISSION OR OTHER VALUABLE CONSIDERATION WITH ANY BROKER. NO FEE, COMMISSION OR OTHER CONSIDERATION HAS BEEN FIXED BY ANY GOVERNMENTAL AUTHORITY OR BY ANY TRADE ASSOCIATION OR MULTIPLE LISTING SERVICE. Nothing herein is intended to prohibit an individual broker from establishing a policy regarding the amount of fee, commission, or

---

[1] The agreement left the sale price blank, but stated the terms, in a handwritten insert, as "cash."  A second word following "cash" is indecipherable.

other valuable consideration to be charged in transactions by the BROKER.

The agreement then set the commission as follows:

> SELLERS agree to pay BROKER a Sale Commission of 6%: a Lease or Rental Commission of 1 Month and a Lease Renewal Commission of 1 Month on each one-year renewal of the lease if, the sale or exchange, or lease of this property or any part of it, is made by BROKER, cooperating agent, SELLERS, or any person during the term of this listing agreement. This commission shall be payable on closing of title or signing of lease.

> [(Emphasis added on handwritten provisions).]

In April 2014, shortly before the extended agreement expired, the Church entered into a twenty-six-month lease with the Board, which intended to use the property for an elementary school. The parties agree the Board needed a temporary location for the pupils and staff of the James Monroe Elementary School that was severely damaged in a fire the previous month.

The Board was entitled to use the school "rent free" for the initial twenty-six months, but was required to pay the Church $900,000 for each of two six-month "hold over terms" if the Board continued to occupy the school after the initial term:

> 2.01 Rent. Tenant shall enjoy the use and occupancy of the Premises subject to the terms of this Lease rent free for the Term. If Tenant should occupy the Premises beyond the Term (the "Holdover Term") Tenant shall be bound to pay Landlord the sum of $900,000 (the "Holdover Rent") for each additional six

4

> months of holdover by Tenant payable monthly for six months, regardless of whether Tenant actually occupies the Premises for the entire six month Holdover Term.  Tenant shall be entitled to no more than two Holdover Terms.

The Board was also obliged to pay any real or personal property taxes — the Church paid none — and any land-use-related fines.

The Church leased the school "as-is, where-is, with all faults."  In its sole discretion, the Board could cancel the lease by October 1, 2014.  The lease also authorized the Board to conduct various inspections.  The lease was subject to approval of local zoning and State education officials.[2]

The Board was required, at its sole cost and expense, to repave the parking lot.  It was also permitted — not compelled — to make any other improvements to the school it deemed necessary or desirable, including, specifically, replacing or repairing the roof, and replacing the boiler.  The Board was also responsible for all utilities, building and landscape maintenance, and snow removal and for obeying governing laws.  The parties warranted to each other that they had not dealt with a broker in connection with the lease, and would indemnify the other for any broker's claims.

---

[2] The lease included a provision of questionable enforceability, which generally obliged the Board not to disclose to the Church, or anyone else, the results of its environmental investigation.

On June 18, 2014, Century sought payment of a commission based on the asserted cost of the Board's repairs. The bill sought $115,384.62, stating "$1,500,000 repairs for rental of St. Cecelia's School, based on a 26 month lease, 2 months commission due. Two (2) month's rent due based on rental, repair evaluation."[3] The Church refused to pay, and Century's complaint followed in August 2015. Century alleged, "Pursuant to the Listing Agreement, [the Church] agreed to pay [Century] a commission in the event of any sale or sale of the Subject Property," and it was entitled to a commission based on theories of breach of contract and unjust enrichment. The Church answered that the agreement spoke for itself and Century was not entitled to damages under either theory.

In its motion to dismiss for failure to state a claim, the Church provided the court with the referenced documents.[4] At oral

---

[3] We assume Century took 1/26th of the $1,500,000 to calculate an alleged "monthly rent" of $57,692.31, then multiplied that by two, which equals $115,384.62.

[4] In opposition, Century expanded the record beyond the complaint, by providing what counsel claimed, in a certification, was the Board's response to an Open Public Records Act request for documentation of "the Board's expenditures in connection with the repairs and/or renovations of the St. Cecelia's School." The document includes multiple categories of expenses under various numbered accounts without explicit reference to St. Cecelia's School, except for one account described as "Building Improvements – St. Cecelia's", which included payments of $943,417 for the

argument, the Church contended: the plain terms of the agreement — which authorized a commission of one month's rent on leases at $25 a square foot — did not entitle Century to a commission under the Board's rent-free lease; Century sought to "expand the meaning of commission and rent to something that the contract . . . doesn't contemplate"; and the unjust enrichment claim was barred since the parties contractually agreed to the terms of a commission.

Century argued that instead of the Board paying rent on a per square footage basis, the parties to the lease agreed, based on the condition of the building, that the Board would pay for capital improvements in lieu of rent. Regardless of the form of consideration, Century argued, it should be entitled to a commission based on the consideration the Board paid for the right to utilize the property.

In an oral decision, the trial court held that the commission was based on rent — "something that you pay once a month." The court acknowledged that if the Board held over and incurred the $900,000 rent for one or both of the six-month periods, then

---

period April 2014 through December 2014, including roof and boiler-related expenditures. The total of all expenditures on the document exceeded $3.2 million. Although the document may have qualified as a business record, or public record, it was not self-authenticating, nor was a proper foundation laid. See R. 1:6-6. Nonetheless, the court noted, as we do, that only roughly $900,000 of expenditures were clearly attributed to the school.

Century would be entitled to a commission based on that rent. However, Century was not entitled to a commission based on the value of capital improvements the Board made. The parties to the agreement could have based a commission on other forms of consideration, but did not. In support of its conclusion that capital improvements should not be deemed a form of rent, the court observed that the lease addressed rent separately from the provisions on capital improvements, and nothing in the lease characterized the improvements as payments in lieu of rent. Also, the court resolved any ambiguity in the agreement against Century, as the drafter.

## II.

### A.

We begin by reviewing governing principles of law. We review de novo an order dismissing a complaint under Rule 4:6-2(e). See Stop & Shop Supermarket Co. v. Cty. of Bergen, 450 N.J. Super. 286, 289-90 (App. Div. 2017). "In reviewing a complaint dismissed under Rule 4:6-2(e) our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). "The essential test is simply whether a cause of action is suggested by the facts, and plaintiffs are entitled to every reasonable inference of fact." Green v. Morgan Props., 215 N.J.

431, 451-52 (2013) (internal quotation marks and citation omitted). "A motion to dismiss a complaint for failure to state a claim 'may not be denied based on the possibility that discovery may establish the requisite claim; rather, the legal requisites for plaintiffs' claim must be apparent from the complaint itself.'" Teamsters Local 97 v. State, 434 N.J. Super. 393, 413 (App. Div. 2014) (quoting Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App. Div.), certif. denied, 176 N.J. 278 (2003)); see Printing Mart-Morristown, supra, 116 N.J. at 768.

We review de novo a trial court's contract interpretation, as it presents a legal issue. See Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). We seek to ascertain "the reasonably certain meaning of the language used, taken as an entirety, considering the situation of the parties, the attendant circumstances, the operative usages and practices, and the objects the parties were striving to achieve." George M. Brewster & Son, Inc. v. Catalytic Constr. Co., 17 N.J. 20, 32 (1954); see also Pacifico v. Pacifico, 190 N.J. 258, 267 (2007) (stating that a court examines contract terms "in light of the common usage and custom"). We enforce contracts as written, and decline to make a better contract than the parties made for themselves. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); see also Kieffer, supra, 205 N.J. at 223 ("The judicial task is simply interpretive; it is not to rewrite

a contract for the parties better than or different from the ones they wrote themselves.").

Moreover, we construe any ambiguity against the drafter, because we presume it protected its own interests, and "chose the words that may be susceptible to different meanings . . . ." Kieffer, supra, 205 N.J. at 224. Where an ambiguity exists, meaning the contract is susceptible to two reasonable alternative interpretations, M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002), its resolution is a fact question. Michaels v. Brookchester, Inc., 26 N.J. 379, 388 (1958). But, a jury need not resolve an ambiguous term's meaning if, after considering all competent relevant materials, a genuine issue of material fact does not remain. In re Teamsters Indus. Emps. Welfare Fund, 989 F.2d 132, 137 (3d Cir. 1993).

### B.

The parties acknowledge that the agreement entitled Century to a commission equal to one month's rent, although the listing agreement does not actually use the word "rent" in defining the amount of a commission for a lease. The agreement simply states "1 month" as the amount of commission.

The parties dispute whether the Board's lease with the Church obliged the Board to pay rent for the initial twenty-six month term. Century asserts that the Board's "renovations [were]

10                                                    A-2506-15T2

consideration paid in lieu of rent[,]" which triggered an obligation to pay a commission. The Church argues that the spending was not rent, and that it provided the building rent-free for the initial term.

"Ordinarily when a lease is made we find an agreement by the owner-lessor to turn over specifically-described premises to the exclusive possession of the lessee for a definite period of time and for a consideration commonly called rent." Thiokol Chem. Corp. v. Morris Cty. Bd. of Taxation, 41 N.J. 405, 416 (1964). "Rent is a fixed sum, or property amounting to a fixed sum, to be paid at stated times for the use of property . . . ." M. E. Blatt Co. v. United States, 305 U.S. 267, 277, 59 S. Ct. 186, 189, 83 L.Ed. 167, 170 (1938) (internal quotation marks and citations omitted). However, "rent is not essential to a lease; for, from favor, or valuable consideration, the tenant may have a lease without any render." Thiokol Chem. Corp., supra, 41 N.J. at 418 (internal quotation marks and citation omitted); see also Powell on Real Property § 16A.01 (2017) ("Since a landlord may gratuitously create a lease, however, not every tenant is liable for its [rent] payment.").

Rent may be payable "in kind," such as in the form of crops raised from the leased land. See, e.g., Reeves v. Hannan, 65 N.J.L. 249, 251 (E. & A. 1900); Van Dyke v. Anderson, 83 N.J. Eq.

568, 570 (Ch. 1914). However, improvements are generally not rent. "Even when required, improvements by lessee will not be deemed rent unless intention that they shall be is plainly disclosed. Rent . . . does not include payments, uncertain both as to amount and time, made for the cost of improvements . . . ." M.E. Blatt & Co., supra, 305 U.S. at 277, 59 S. Ct. at 189, 83 L.Ed. at 170. In determining the nature of the parties' relationship, the court considers "the intention of the parties as revealed by the language employed in establishing their relationship, and, where doubt exists, by the circumstances surrounding its making as well as by their course of operation under it." Thiokol Chem. Corp., supra, 41 N.J. at 417.

We need not firmly plant our flag on one side or the other of the legal question whether "rent" is wholly a product of the expressed intent of the parties to a lease. Cf. Shum v. Gaudreau, 562 A.2d 707, 713 (Md. 1989) (in a case involving landlord's summary remedies for nonpayment of rent, the court declined to follow authorities that "indicate that rent may be defined to be whatever the parties intend"). The issue here is what the parties to the agreement intended "rent" to mean, since that definition would then apply to the lease between the Church and Board, in order to calculate the commission owed, if any. Inasmuch as Century and the Church did not adopt any special definition of

rent in its agreement, we adhere to commonly understood notions of rent. As discussed above, we are left to conclude that improvements are generally not rent, and rent does not include payments that are uncertain as to amount and time, and are entirely discretionary.

Applying these principles, Century's asserted claim for commissions must fail. The Board's lease with the Church did not provide for the payment of cash rent during the initial twenty-six-month term, nor did it require payment of rent in-kind.[5] Rather, according to its terms, it left it to the Board, in the exercise of its discretion, to decide whether to make improvements or repairs. The lease did not specify the extent of those improvements, their cost, or when they had to be finished.

We acknowledge one exception. The lease required the Board to pave the parking lot "[p]rior to the expiration of the Term" and at the Board's "sole cost and expense . . . ." The parties left the work's "reasonable specifications," and its timing, to the parties' later agreement. Yet, even this mandated improvement

---

[5] Had the agreement pertained to the sale or lease of farmland, and the landowner entered into a lease with a tenant farmer that provided for payment not in cash, but in the form of half the yield of the land, that landowner would, we presume, be liable to the broker for one month's in-kind payment (although we need not address whether the broker would be payable in-kind, or whether the broker would be entitled to cash equivalent).

— of uncertain scope — does not constitute "rent" as commonly used and understood, and upon which Century predicated its commission.

It is of no moment whether or not the Board enhanced the value of the building by the end of the lease.  Any enhancement is not a basis for calculating Century's commission.  Thus, there is no need for discovery to determine the improvements' precise cost and value.

We also reject Century's contention that, since the parties present differing interpretations of the agreement, discovery is needed to ascertain its meaning.  Having applied the common meaning and usage of rent, we discern no ambiguity that would create a fact issue warranting discovery.  Also, any remaining ambiguity must be resolved against Century, which drafted the agreement. See Kieffer, supra, 205 N.J. at 224.

Century's alternative claim for unjust enrichment was also properly dismissed.  If a contract exists between the parties, unjust enrichment is generally inapplicable.  Shalita v. Twp. of Washington, 270 N.J. Super. 84, 90-91 (App. Div. 1994) ("[G]enerally, the parties are bound by their agreement, and there is no ground for imposing an additional obligation where there is a valid unrescinded contract that governs their rights."); see also Caputo v. Nice-Pak Prods., Inc., 300 N.J. Super. 498, 507 (App. Div.) (stating "unjust enrichment is an equitable remedy

resorted to only when there was no express contract providing for remuneration"), certif. denied, 151 N.J. 463 (1997). Instead, Century is confined to its contractual remedies. Cf. Nat'l Amusements, Inc. v. N.J. Tpk. Auth., 261 N.J. Super. 468, 478 (Law Div. 1992), aff'd, 275 N.J. Super. 134 (App. Div.), certif. denied, 138 N.J. 269 (1994). Weichert Co. Realtors v. Ryan, 128 N.J. 427 (1992), upon which Century relies, does not compel a different result because those parties did not execute a binding written agreement. Id. at 441.

We also decline to reach Century's contention, raised for the first time in its reply brief, that the Church breached the covenant of good faith and fair dealing. "We do not ordinarily consider an argument that is raised for the first time in a reply brief." Quigley v. Esquire Deposition Servs., 409 N.J. Super. 69, 74 (App. Div. 2009), certif. denied, 201 N.J. 154 (2010). Furthermore, we "will decline to consider questions not properly presented to the trial court when an opportunity for such a presentation is available." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

C.

Although we affirm the trial court's dismissal of the complaint, we modify that aspect of the order that did so with prejudice. Generally, "[i]f a complaint must be dismissed after

it has been accorded the kind of meticulous and indulgent examination [required] . . . then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint." Printing Mart, supra, 116 N.J. at 772. However, it is appropriate to dismiss a complaint with prejudice where the "plaintiff conceded that he had no further facts to plead" and instead "hope[d] that he could use the tools of discovery to uncover evidence of wrongdoing." Nostrame v. Santiago, 213 N.J. 109, 128 (2013). The court should state its reasons if it departs from the general rule that a plaintiff should have an opportunity to amend. See Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112, 116 (App. Div. 2009).

Here, we lack a basis for concluding that Century has no further facts to plead, nor can we exclude the possibility that it may have a well-founded basis for alleging a breach of the covenant of good faith and fair dealing, or refining and bolstering the claims we find have fallen short. Furthermore, the Church conceded that Century was entitled to a commission if the Board availed itself of one or both "holdover" periods.

Affirmed as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2506-15T2