Kirkpatrick C. J.
Upon this case I observe.
1. A guardian appointed by the Orphans’ Court in one of our counties, under the statute, supplies the place of both a guardian for nurture and a guardian in soccage, in the ancient law. Such guardian has not only the custody of the person, but also the care of the land, (a) This it is presumed will not be questioned.
A guardian in soccage then has not only the care of the land, but also an interest in it. He is said to be Dorn,inns pro tempore, and to have the seizin of the land, una cum exitilms. He may let it for years and the lessee may have an ejectione firmse thereupon. This is settled in the case of Shoplane v. Royderer. Cro. Jac. 55, 99.
Such guardian, then, not having abare authority only, but also an interest in the land, he may make leases thereof as any other having interest may do ; and if he make a lease to continue beyond his guardianship, it is not absolutely void upon the infant coming of age, but voidable only. And consequently the infant may at that time, either affirm the lease or avoid it at his pleasure. (b) If he accept of rent or .do any other act or acts, shewing his assent thereto, it is construed to be an affirmance. In one case, the infant after his age, saying to the tenant, God give you joy of it, was held enough to confirm the lease. Bacon, Leases &c. I. 9.
2. It is readily admitted, that according to the strictness of the ancient law as laid down by Littleton, in section 68, if the lessee for years or other term certain, had sown the land, and the term had expired before the crop was ripe, he could not enter to reap it and take it away. It was said to be his own folly to sow.
*532 But then this rule even in England, admits of exceparising from the custom of the country; and such custom too *has been adjudged to be good and reasonable, and that whether the lease were by deed or by parol only.
In this state I have always understood it to be the universal custom, and therefore the settled law, that the tenant, after the expiration of his term, should have liberty to enter, cut, and carry away his way-going crop as it is called, that is all the grain which he had sown, but which was not then yet ripe, (a) And what can possibly be more reasonable? Here leases are usually from year to year, from April to April. Shall the lessee have, for his year, the benefit of the spring crop only, and be deprived of the winter crop, -which is by far the most important ?
It may be said that he ought to guard himself by covenants. It is true, he may do so. But still 'the very essence of the 'contract is that he shall have one year’s course of crops. He pays a year’s value, he bestows a year’s labour, he must sow in its season or not at all, he must eat in the winter as well as in the summer. The very nature of the thing shews that he is to have the successive crops of the year. Shall the tenant be deprived then, of the substantial benefits of his lease, unless he shall fortify himself with covenants of entry ?
I have always understood the universal custom of the country to be otherwise, as well as the course of decision in all the courts. Indeed the matter appeared to me to be so well settled, that I was surprised to hear it even made a question.
But besides, in this case there is a particular stipulation contained in the lease itself, “ that the plaintiffs, in the first year, are to plant the field next the barn, southward, and to sow the same with rye or oats, and to sow the corn ground next the woods with oats and clover-seed ; and that, in the second year, they are t.o plant the young orchard back of the house, together with the field *533 next adjoining, westward, and to sow the same with rye or oats, and clover.”
The lease was for two years, beginning on the first of April 1813; it is expressly stipulated that the tenants should have the privilege of sowing two crops of rye; the crop of the last year could not possibly be reaped before the expiration of the lease ; this stipulation of itself, therefore, amounts to a covenant that they shall enter and reap it after that time, unless we can suppose they were to sow it for the benefit of the landlord and not for their own ; a supposition too absurd to be seriously maintained.
*3. The construction of the words of the lease which, it was said, gave permission to the tenants, in the second year, to substitute one crop in the place of another, that is, instead of sowing rye in the autumn to sow oats in the following spring, could not be made with certainty and precision, in any other way than by referring them to the course of husbandry and the custom among farmers in that particular part of the country. It was stoutly maintained, that the sdwing of the corn ground with oats, in the second year, must be intended a sowing with winter-oats in the autumn, and not with the common oats in the spring, when the lease must have expired, or nearly so.
This winter-oats was altogether a new thing to me, but I thought I had heard of oats being sown in the autumn or winter in England, and therefore did not choose to decide the matter conclusively myself, but rather after having first stated the general import of the words, when applied to the different positions taken by the parties, to leave it to the jury, who were perfectly acquainted with the nature and succession of crops, to apply them according to the subject matter, and by that means to find the true meaning of the instrument. The meaning of the words, simply considered, was clear enough, the state of things upon which they were to operate was the difficulty, and this was a matter of fact to be proved by the evidence and to be found by the jury. And besides all this, as to the substance of the thing, it could make no difference to the landlord whether these tenants entered to reap their crop of oats, or their crop of rye.
Upon a review of the whole matter, I am satisfied the *534 law was correctly declared, and the verdict justly found. therefore,
Let the rule to shew cause be set aside.
Rossell J.
From the report of this case, by the Chief Justice, it appears that Benjamin Doughty, guardian to Thomas 8. Everitt and his sister, leased on the 10th of February 1813, the farm of his wards for two years from the 1st of April 1813, to the plaintiffs. By special provision, in the said lease, the Van Dorens were entitled to plant certain fields, therein described, and sow the same with a crop' of rye or oats. ‘ That in July 1814, the defendant, Everitt, attained the age of twenty-one years, the Van Dorens then being in possession of the premises under the lease. Everitt gave them notice in the usual form, to quit at the *expiration thereof. That on the last days of March 1815, or on the first days of April, or partly on all these days, the plaintiffs, Van Dorens, sowed a part of their lands with oats, which at the time of har- ' vest were cut and carried away by the defendant. On the trial, a motion was made for a nonsuit which was overruled, and the jury gave a verdict for the plaintiffs for 72 dollars, 50 cents, with which the judge was satisfied. There is now a motion for a new trial, with an allegation that the Chief Justice refused to nonsuit the plaintiffs, and left the construction of the law to the jury, erred in his charge to them, and that they gave' a verdict contrary to law and evidence.
On examining the reasons of the Chief Justice for refusing to nonsuit ¿the plaintiffs, and his charge to the jury on the law and the evidence, I consider them well founded in law and equity. The lease from the guardian, who had the sole charge of the estate of his wards, was certainly good until those wards, or one of them, should arrive to full age; whether it should be so for the remainder of the term, depended on him who was entitled to the estate; should he receive the rent, after he came of age, it would be a recognition of the lease and he shall be bound by it. Plow. 418. From the authority and interest which the policy of the law hath invested guardians with, a guardian may do several acts which will bind the infant, such *535 as making leases. “ And the infant, when he comes of age, may, by acceptance of rent or other act, if he thinks proper, make such leases good and unavoidable.” 2 Bac. Abr. 682, 683.
As to the lease itself. There was a special provision that the lessees might sow certain fields with rye or oats ; they chose the latter, and although, by the terms of the lease, he was to give possession of the farm to the guardian on the 1st day of April 1815, common sense would forbid us to suppose, for a moment, that this surrender of possession of the farm included the fields on which his crop was growing or to grow, of these he held a virtual possession until this crop was harvested; and whether he worked in perfecting the intention of the lessor as well as his own, agreeably to the manifest meaning of the lease, before or after the 1st of April and before he had delivered possession of said fields, ought not nor could it change the situation of the parties. One had, for a valuable consideration, leased to the tenants those fields for his benefit, and he was entitled to it. The landlord would neither gain nor lose by the circumstance of the tenants not having fully Completed putting in their crop until after the day they were to deliver possession of the rest of the farm. Thus thinking, I am of opinion that the postea should be delivered to the plaintiffs.

 State vs. Cheeseman, ante 445. Ten Brook vs. McColm, 7 Hal. 97. Matter of Van Houten, 2 Gr. Ch. 230.

 Snook vs. Sutton, 5 Hal. 133. Williams vs. Mabee, 3 Hal. Ch. 500. Farley vs. Woodburn, 2 Stock. 96. Porch vs. Fries, 3 C. E. Gr. 204. See Antonidas vs. Walling, 3 Gr. Ch. 42. Todd vs. Jackson, 2 Dutch. 526. Rockwell vs. Morgan, 2 Beas. 384. Ownes vs. Ownes, 8 C. E. Gr. 60.

 Debow vs. Colfax, 5 Hal. 128. Howell vs. Schenck, 4 Zab. 89. Smith vs. Clayton, 5 Dutch. 357. See The Society &c. vs. Haight, Sax. 393. Hendrickson vs. Ivins, Saw. 563.