## HARRY B. PAUL v. HENRY KERSWELL.

S. and D., in 1851, owned a farm divided into lots. December 5th, 1851, they conveyed lot No. 115 to John Perkins. October 29th, 1860, S., who had become owner of the entire estate, conveyed to Benjamin Souder, and on the 18th of March, 1892, Benjamin Souder conveyed to Hovey the "undisposed-of portion of the premises," describing the whole farm by metes and bounds. August 12th, 1886, Hovey conveyed to Blackburn lot No. 115, the premises in dispute. September 21st, 1886, Blackburn conveyed lot No. 115 to Finlay. June 10th, 1892, Finlay conveyed to the defendant. The deed to Perkins, under whom the plaintiff claims title, was not recorded until May 15th, 1887, thirty-five years after its delivery. The deed to Perkins, not being recorded until after the defendant's title originated, was invalid against the defendant unless the title defendant took was impaired by notice of the prior unrecorded deed. The burden of proving such notice rests upon the plaintiff. To meet that issue, plaintiff relied upon the recital in the deed from Benjamin Souder to Hovey, which recited that Souder, "being seized and possessed in fee of a certain tract of land, caused the same to be laid out into building lots, a number of which were conveyed by deeds duly acknowledged and executed, as by reference to said deeds recorded according to law, or intended so to be, will fully appear." *Held*—

1. That Hovey and those under whom he claimed title were warranted in assuming that the duty to record the Perkins deed would not have

been delayed for so long a period of time, and his agent, having examined the records and made all reasonable efforts to ascertain who held the unrecorded deed for the property, Hovey was a *bona fide* purchaser without notice.

2. A purchaser, though he may have had notice of the previous outstanding title, may protect himself in virtue of the title of his vendor, to whose title, by a subsequent purchase, he has succeeded.

On rule to show cause.

Argued at February Term, 1897, before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff, *Samuel H. Richards* and *Thomas E. French.*

For the defendant, *Joseph H. Gaskill.*

The opinion of the court was delivered by

DEPUE, J.   This was an action of ejectment to recover lot No. 115, part of a tract of land in the county of Camden. The case was tried before the court without a jury and resulted in a finding for the defendant.   Joseph W. Souder and William W. Deklyne, in 1851, owned a farm at Palmyra, of which the premises in question were a part.   December 5th, 1851, they conveyed lot No. 115 to John Perkins.   This deed was not recorded until May 15th, 1887, thirty-five years after its delivery, and there is no proof that Perkins ever exercised any act of ownership over the premises.   Perkins died March 13th, 1886, and, in proceedings for the partition of his estate, the lot was sold to and conveyed to the plaintiff by deed dated March 3d, 1887.   The above is the title on which the plaintiff relied.

On the 16th day of October, 1852, Deklyne conveyed to Joseph Souder the undivided one-half of the whole premises, describing it by metes and bounds.   On October 29th, 1860, Joseph Souder conveyed to Benjamin Souder, and on the 18th of March, 1882, the heirs of Benjamin Souder conveyed

to Hovey the undisposed-of "portion of all the following described premises," describing the whole farm by metes and bounds. August 12th, 1886, Hovey conveyed eight lots to Blackburn, among which was lot No. 115, the premises in dispute. September 21st, 1886, Blackburn conveyed lot No. 115 and three other lots to Findley. Findley took possession and erected a house partly on the premises in controversy. June 10th, 1892, Findley conveyed to Kerswell, the defendant.

The plaintiff's title is first in point of time, but the deed to Perkins, not being recorded until after the defendant's title originated, is invalid as against the defendant, unless the title he took was impaired by notice of the prior unrecorded deed to Perkins. The burden of proving such notice rests upon the plaintiff. *Coleman* v. *Barklew,* 3 *Dutcher* 357. To meet that issue the plaintiff relies upon the recital in the deed from the heirs of Benjamin Souder to Hovey. That deed recited that Joseph W. Souder, " being seized and possessed in fee of a certain tract of land, caused the same to be laid out into building lots, a number of which were conveyed by deeds duly acknowledged and executed," &c., " as by reference to said deeds, recorded according to law, or intended so to be, will fully appear, and there remaining unsold of the said tract so divided into building lots as aforesaid a large portion thereof; and whereas, the said Joseph W. Souder, by a deed," &c., " conveyed the portion remaining unsold as aforesaid unto Benjamin K. Souder," &c. Then follows the granting portion of the deed, whereby the grantors, as heirs of Benjamin K. Souder, conveyed to Hovey " all their estate, right, title, interest, claim, property, possession, residue, remainder and demand into and out of the property or tract of land so vested in them as aforesaid, being the undisposed-of portion of all the following tracts of land." Then follows a description of three several tracts of land by metes and bounds, each separately described. The lot now in question is part of one of the tracts so described.

In *Roll* v. *Rea,* 21 *Vroom* 264, it was held that " one

claiming title to lands is chargeable with notice of every matter affecting the estate which appears on the face of any deed forming an essential link in the chain of instruments through which he derives his title, and also with notice of whatever matters he would have learned by any inquiry which the recitals in those instruments made it his duty to pursue."

In that case the conveyance was of the right, title and interest of the grantor in a certain tract of land, which had been laid out into building lots by maps filed in the clerk's office. The deed contained a stipulation that the conveyance should not conflict with the title to any part of the premises previously sold and conveyed by the grantor to any party or parties, and that the deed was subject to such conveyances. The defendant claimed title under an earlier deed which had not been recorded, and contended that, though the deed had never been recorded, the plaintiff had notice of it before she took her conveyance. The court, in dealing with this aspect of the case, said that the grantee in the deed containing the stipulation, being informed that out of a large tract of land held for sale in parcels, some parcels had been conveyed to purchasers, but having no information that any of those purchasers had failed to record their deeds, was warranted in assuming that they had observed this statutory duty for the protection of their interests. "The fact that the plaintiff's deed did not define the residue which it conveyed might have suggested to some minds an inquiry from the grantor as to what had previously been sold, but such a suggestion would have been reasonably answered by the presumption that the records afforded all the needed information."

The deed to Hovey is not in this respect in conformity with the deed under discussion in Roll *v.* Rea, in that the recital in it is of conveyances recorded or intended to be recorded. But the principle adjudged in that case applies to this case. The deed to Perkins was made in 1851, and the deed by the heirs of Souder to Hovey was made in 1882, and Hovey was warranted in assuming that the statutory duty to

record a deed would not have been delayed for so long a time. The evidence discloses that those under whom the defendant claims title had done everything that was reasonably necessary to ascertain the condition of the title. Perkins, although he resided near by and saw the premises were being disposed of, never took possession of or exercised any act of ownership or made any claim of title. There is no pretence that Hovey had any knowledge of the existence of the Perkins deed, and the proof is that he caused a thorough and exhaustive examination of the records in the office of the county clerk to be made. Blackburn, who was Hovey's agent prior to the time the deed was made and acted as his agent afterwards, testified that he went to Mount Holly and examined the records, and that he made efforts to ascertain who held the unrecorded deeds for this property; that he advertised in the "Philadelphia Ledger" for three or four insertions; that he made inquiry in the neighborhood of officials and anyone he could get to talk with that knew anything about the land; that he made inquiries of old residents of the town; "I suppose I could name a hundred, maybe, if I could think of them—most everybody I could talk with;" that he inquired of Joseph W. Souder whether he had any record of the lots conveyed; that Souder said he had not, "and said he couldn't tell me what he had conveyed; that I would have to go to the records in Mount Holly and find it out; that he had a list of the property sold, but couldn't tell me what became of them;" and that the first knowledge he had that there was an outstanding title to lot No. 115 was a few months before, when he was told by the plaintiff's attorney that he had some claim against the lot, and that he never heard the slightest intimation that there was an outstanding interest or claim to that lot before.

Blackburn himself took title from Hovey for lot No. 115 August 12th, 1886, and conveyed to Findley September 21st, 1886. He was also agent for Findley in erecting a house on this and the adjoining lot, and prepared the deed from Findley to the defendant.

The proof is plenary that Blackburn and Findley at least were *bona fide* purchasers without notice. Nor is there anything in the case on which to impute to the defendant knowledge of the Perkins title. I have referred to the Blackburn and Findley title for the reason that the active efforts of Blackburn to ascertain what conveyances had been made of lots for which deeds had not been recorded, clearly invests the title of those grantees with the character of title acquired by a purchase *bona fide* within the protection of the Registry act. To that title the defendânt succeeded, the rule of law being well settled in this state that a person, though he may have had notice of a previous outstanding title, may protect himself in virtue of the title of his vendor, to whose title he by a subsequent purchase has succeeded. The title of a prior purchaser, being perfect by reason of it having been acquired *bona fide,* will be transmitted to his vendee—a rule that is necessary to secure to a *bona fide* purchaser without notice the full benefit of his purchase. *Holmes* v. *Stout,* 2 *Stock.* 419, 429, 437 ; *Sharp* v. *Shea,* 5 *Stew. Eq.* 65 ; *Roll* v. *Rea, supra.*

There is also evidence of an adverse possession for the statutory period on which the trial court was justified in finding title by adverse possession.

The rule to show cause should be discharged.