JOHN T. COOK and SUSANNA T. COOK, his wife,

*v.*

MASON M. COOK et al.

[Submitted May 18th, 1914.  Decided June 5th, 1914.]

1. A tenant of farm land for a term, certain or uncertain, may after the expiration of his term enter on the premises and cut and carry away all the grain sown but not ripe when his term expired.

2. A sale under decree of partition of farm land in possession of a tenant in common under an agreement with his co-tenants, whereby he should have possession until a sale, passes to the purchaser the growing crops unless specially reserved, but the tenant has an equity in the proceeds for the value of the crops.

3. Where, in partition of a farm in possession of a tenant in common with the consent of the co-tenants, an order directing the reference master to report the value of the tenant's interest, by reason of his ownership of the growing crops, was entered by the solicitor of the complainant with the consent of the tenant's attorneys, the parties understood that the crops should not be reserved from the sale, so that the tenant was entitled to an equity in the proceeds for the value of the crops.

In partition.   On exceptions to master's report.

*Mr. William J. Backes,* for the complainants.

*Messrs. Wicoff & Lanning,* for the defendants.

BACKES, V. C.

Mason M. Cook, his two brothers and two sisters, were tenants in common of a farm in Lawrence township, Mercer county. Mr. Cook was the tenant in possession from the time of his mother's death, from whom the farm was inherited, until it was sold under the decree in this suit.   This was by reason of an agreement which he had with his brothers and sisters, whereby he was to have the use of the farm until it was sold, upon the promise by him to pay the interest on a mortgage, the taxes and insurance premiums.   At the time the farm was sold, June 18th, 1913, there were growing crops which Mr. Cook had planted and sown.   They were not reserved in the master's deed.   In his answer to the bill, Mr. Cook set up a yearly tenancy in addition to his estate as tenant in common.   By the interlocutory decree the matter was referred to a master to ascertain the interests of the respective parties, and by a supplemental order he was further directed to ascertain and report whether Mason M. Cook was the owner of any particular estate in the premises and if so, what its fair and reasonable value was.   The master reported the respective estates of the tenants in common, and futher that Mr. Cook had such an estate which would terminate when the premises were sold, and possession given to the purchaser, and that its value measured by the probable reap, was $701.05, which should be allowed to him.   The final decree confirmed the master's report, except as to the part relating to Mr. Cook's particular interest and concerning which leave was given to file exceptions.   The proceeds of sale have been divided, with the exception of $1,500, which the selling master has paid into court, to await the disposition of the exceptions.   The matter is before me on exceptions filed by the complainant and Mason M. Cook, and on an order to show cause why the remaining

moneys should not be equally distributed. The exceptions attack only the amount and not the propriety of the allowance. The right to it is raised by the petition upon which the order to show cause was granted. The petition will be regarded as a further exception.

Did the growing crops pass to the purchaser by virtue of the sale and the master's deed, is the main and underlying question for decision. Mason M. Cook's tenure in the undivided interests of his co-tenants in the farm, acquired by his agreement with them, was uncertain as to termination, and as to them, or their vendees, he was entitled to harvest the crops he had sown. A tenant of farm land, whether for a term certain or uncertain, has a right, after the expiration of his term, to enter upon the demised premises and cut and carry away all the grain which he has sown but which was not ripe when his term expired. *Corle* v. *Monkhouse, 47 N. J. Eq. 73.* But this rule is inapplicable as between Mason M. Cook and his vendee, viz., the purchaser under the master's sale. Mr. Cook occupied the farm in his own right of tenant in common, and his possession was made exclusive by the agreement with his brothers and sisters. Had he and his co-tenants joined in a voluntary conveyance of the farm to the present purchaser, without reserving the crops, there could be no doubt as to their passing by the deed. *Terhune* v. *Elberson, 3 N. J. Law 297.* The sale and conveyance by the master accomplished the same result.

In *Bloom* v. *Welsh, 27 N. J. Law 177*, which was an action to recover the value of winter grain growing on land purchased by the defendant at a sale under a common law execution, and which grain had been purchased by the plaintiff from the execution debtor between the recovery of the judgment and the sale, it was held that the crop passed to the purchaser of the land under his deed. In that case, Chief-Justice Green said: "It will not be questioned, as a well-settled rule of law, that a conveyance of real estate, either by the owner of by the sheriff, under a sale by judgment and execution, carries with it the growing crops as an incident, unless there be an express reservation in the deed."

In *Cropper v. Brown, 76 N. J. Eq. 406,* Vice-Chancellor Garrison, in discussing the status of purchasers under judicial sales, said: "In my view there is no real distinction in this state in respect to the principles to be applied respecting the rights of the parties between judicial sales and other similar sales voluntarily made between parties. The judicial sale is made by the officer in whom the law has lodged the power to make the sale. The fact that it is *in invitum,* and that the officer is only exercising a power and has not title, does not, in my view, in any way alter the rules to be applied when the contract has once been made." * * * "By what seems to me to be a perfect analogy, it must therefore be held that when this legal agent, namely, the judicial officer, observing proper legal formalities, at a public sale strikes off the property to a purchaser, who thereupon signs the conditions of sale, thereby entering into a contract to purchase the premises named at the price named, the situation is exactly the same as if the contract were between private parties. The sheriff is vested by law with the power, on behalf of the persons against whom he holds the writ, to sell the property. This he does, and a written contract satisfying the statute of frauds is then made. I cannot perceive any reason why the same principles should not control the parties with respect to this contract as would control private parties voluntarily entering into a similar one." The doctrine of these two cases is applicable to sales made by virtue of decrees in partition suits. In *Calhoun v. Curtis, 4 Met. 413,* Chief-Justice Shaw held that where one of several tenants in common of land, without leave or objection from his co-tenants, occupied it exclusively, and sowed it with grain, and partition of the land was made while the grain was growing, that the grain, growing on the purparty of each owner of the land, became the property of each in severalty. He states the reasons for so holding to be that the case of the tenant who sowed was "not within the equitable principle on which emblements are allowed by law to an outgoing tenant, because, when he sowed the rye, he knew that the land was at any time subject to partition, on the application of his co-tenants, or any of them, and of course might be divided and assigned to another co-tenant, in severalty, before the crop could come to maturity." And

so it follows that where land is cultivated by one tenant, with the consent of the others, and, because it is not partible, is sold under statutory authority, the court's officer becomes the agent of all of the parties in conveying the land, which conveyance carries with it the crops as an incident to the soil, unless especially reserved.

The passing of the title to these crops gave Mason M. Cook an equity in the proceeds, which, upon the plainest principles of justice, ought to be protected. The state of cultivation to which he had brought the farm at the time of the sale was undoubtedly a feature which enhanced the purchase price and to that extent he is entitled to compensation.

There is another reason arising out of the circumstances of this case why the allowance should stand. There seems to have been a tacit understanding between the parties to the suit that the crops should pass by the sale, and that Mr. Cook should be reimbursed out of the proceeds. While the matter was pending before the reference master, the supplemental order was made directing him to ascertain and report the value of Mason M. Cook's special interest by reason of his ownership of the crops. This order was entered by the solicitor of the complainant, with the consent of Mr. Cook's attorneys, and to my mind clearly evinces that it was understood that the crops could not be harvested before the sale; that they should not be reserved from the sale, and that they should form a part of it: for, why the order, if this was not in contemplation? The exceptions, which were filed before the sale, give the intimation that this was the attitude of mind of both exceptants. Any question as to the right of the crops seems to have been an after-thought, first raised by the petition for the distribution of the money paid into court. If the question has been raised *in limini* Mr. Cook might, and probably would, have protected himself by application to the court to except the crops from the operation of the sale. The supplemental order and the proceedings thereunder were assurances to him that he was to be allowed for them out of the proceeds of the sale.

Holding as I do that Mason M. Cook is entitled to compensation, and as the amount thereof, as ascertained and reported

by the master, although excepted to, was not challenged upon the argument or in the briefs of counsel, I will advise an order overruling the exceptions, and that the money in court be distributed by paying first to Mr. Cook the amount found by the master. Costs of these proceedings will be allowed out of the fund.