LYMAN ECKMAN, PLAINTIFF-APPELLEE, v. RUSSELL BEIHL AND HARRY MORGAN, DEFENDANTS-APPELLANTS.

Submitted October 11, 1935—Decided April 9, 1936.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the appellants, *Amos M. Waln.*

For the appellee, *Davis & Davis (James Mercer Davis,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The gravamen of plaintiff's suit, although styled in contract, to recover damages, is that defendants did,

on April 25th, 1935, *"willfully and maliciously"* destroy his growing crop of rye, by ploughing it under, *"in defiance of his right thereto."*

It appears that Elmer Smires and his wife, were tenants by the entireties of a farm near Browns Mills, Burlington county, New Jersey. They had executed a note, secured by a mortgage on the farm, to the Safeguard Finance Company. Subsequent to the execution and delivery of the note and mortgage, on March 25th, 1934, Smires and his wife gave a writing (*Exhibit P-1*), to plaintiff, renting said mortgaged farm to him. It is a peculiarly worded instrument and reads in this manner:

"Browns Mills, N. J.

Mar. 25, –34.

This 25 day of March 1934
We Margaret & Elmer Smires has agreed to rent to Lyman Eckman their farm containing 46 acres on road leading from Browns Mills to Lewistown one & ½ miles from the former place. for the consideration of one dollar $1.00 and other valuable considerations for general farm crop purposes. and it is further understood the ground which is farmed during the farming season shall be sown down in the fall with rye or other cover crop, and further understood that at least 10 acres of this cover crop shall be rye and shall remain in the ground and be harvested the following Summer or all of the cover crop may be rye and used for harvesting if Mr. Eckman So desires.

(Signed) MARGARET SMIRES.

(Signed) ELMER SMIRES.

(Signed) LYMAN ECKMAN."

Plaintiff, by virtue of this instrument, entered into possession of the farm. It is conceded that thereafter, on September 18th, 1934, the Safeguard Finance Company recovered a judgment against the Smires, on their note, secured as aforesaid, in the District Court of the First Judicial District of the county of Burlington, in the sum of $404.15, plus costs. This judgment was docketed on September 20th, 1934,

in the office of the clerk of Burlington county; execution was issued on that day and delivered to the sheriff on the next day. Thereafter the sheriff levied upon the lands in question.

Between September 28th, 1934, and November 8th, 1934, plaintiff sowed twenty-eight acres of rye on the farm.

On November 8th, 1934, after due advertisement, the sheriff conducted a sale of the premises under the aforesaid execution, and Fernwood Realty Company purchased the property for $450. A deed was delivered to the purchaser on November 15th, 1934, and it was recorded in the clerk's office of the county on November 22d, 1934. The Fernwood Realty Company sold the premises to Russell Beihl, one of the defendants herein, and his wife. The deed was also recorded in the county clerk's office.

The last named owners thereupon, during the month of November, 1934, entered into possession of the premises. On April 25th, 1935, while Harry Morgan, for Beihl, was actually ploughing this crop under (the portion actually plowed under being in dispute), the plaintiff did, on that day, notify the defendants of his claim thereto.

The agreement of leasing was silent as to the term of the letting. Nevertheless, counsel for plaintiff in his state of demand, in his opening to the court, and throughout the entire case, including argument on this appeal, adopted and pursued the theory that the lease was for the fixed term of one year, from March 25th, 1934, to March 25th, 1935. Plaintiff, therefore, contended that he had the right to return after the expiration of his term and harvest the crop which he sowed during his term; that he was, in fact, given the right to the way-going crops under the lease which provides, *inter alia,* "* * * at least 10 acres of this crop shall be rye, and shall remain in the ground *and be harvested the following summer or all of the cover crop may be rye and used for harvesting if Mr. Eckman so desires.*" Counsel for defendants was, apparently, content, because of his conception of the law applicable under such circumstances, to go along on the theory that the plaintiff's term of letting was for a fixed term.

The case was tried by both parties on the theory that plaintiff had a fixed term. To that extent, it is, therefore, binding on both parties. *Lastowski* v. *Lawnicki,* 115 *N. J. L.* 230, 234; 179 *Atl. Rep.* 266.

In addition, however, to the submission to plaintiff's theory of a fixed term, defendants also filed twenty-one specifications of defenses. This, it is asserted, was done not because defendants were obliged to do so, since the action though styled in contract sounded in tort, namely, a willful and malicious destruction of his crop, but rather because defendants were perfectly willing to disclose their defenses. These defenses are substantially as follows: that plaintiff had no right to the crop; that defendants did not willfully or maliciously plough the crop under; that plaintiff never notified either defendants or their predecessors in title of his right or interest to the crop; that defendants and their predecessors in title were innocent purchasers for value without notice of plaintiff's right or interest to the crop; that plaintiff had, in fact, abandoned and surrendered his right, if any he had, in and to the crop; and that defendants' rights to the crop were superior to that of plaintiff.

The trial judge, who sat without a jury, denied defendants' motions for nonsuit. He concluded that the provisions of the agreement *"and shall remain in the ground and be harvested the following summer"* was indicative of the fact that plaintiff was given the right to return and harvest the crop. He further concluded that plaintiff had carried the burden of proof and rendered judgment of $500 in favor of the plaintiff and against defendants. It is this judgment which is now challenged.

What are some of the applicable principles of law as to emblements, or way-going crops?

*First: As between landlord and tenant,* "the common law rule is that where the renting is for a time certain, the tenant is not entitled to such crops because (it is said), if it is certain at the time when he sows, how long the tenancy will continue, and it is plain that before he ceases he cannot reap that which he may sow; then it is his folly if he sows." 8 *R. C. L.* 363, § 8, and cases cited.

In the case of *Francis Bros.* v. *Schallberger, 137 Or.* 529; 3 *Pac. Rep.* (2d) 530; 83 *A. L. R.* 108, the court said (at *p.* 112):

"* * * The whole law of emblements, it has been said, is based upon two grounds—public policy and natural justice and equity. Upon the first ground says Blackstone, 'the encouragement of husbandry * * * being a public benefit, tending to the increase and plenty of provisions, ought to have the utmost security and privilege that the law can give it.' (2 *Bl. Com.* 122.) The second ground is based upon the principle 'that the tenant is justly entitled to gather his crops, even though his term has expired, and without regard to the question whether such crops are to be considered as in the nature of personalty or realty.' *Jones on Landlord and Tenant,* § 567, and authorities there cited. In the same section the author says: 'Where the reason of the doctrine fails, it has no application, as where a tenant terminates his estate through his own fault or misconduct.' Another reason for holding that the law of emblements is not applicable to one whose estate is terminated by his own act or default is that the common law limited the right to emblements to those cases, where tenant has an uncertain interest which was determined, after sowing and before severance of the crop, by the act of God, the operation of the law or the act of the landlord.' 1 *McAd. Land. & T.,* §§ 493, 570; *Samson* v. *Rose,* 65 *N. Y.* 411; *Bagley* v. *Columbus, &c., R. Co.,* 98 *Ga.* 626; 25 *S. E. Rep.* 638; 34 *L. R. A.* 286; 58 *Am. St. Rep.* 325."

But in some jurisdictions this rule of common law has been changed by custom. 8 *R. C. L.* 364, § 8, and cases cited.

In our leading case of *Van Doren* v. *Everitt,* 5 *N. J. L.* 539, Kirkpatrick, C. J., said (at *pp.* 542, 543):

"It is readily admitted that according to the strictness of the ancient law as laid down by Littleton in section 68, if the lessee, for years or other term certain, had sown the land, and the term had expired before the crop was ripe, he could not enter to reap it and take it away. It was said to be his own folly to sow.

"But then, this rule, even in England, admits of exceptions, arising from the custom of the country; and such custom, too, has been adjudged to be good and reasonable, and that whether the lease were by deed or by parol only.

*"In this state I have always understood it to be the universal custom, and therefore the settled law, that the tenant, after the expiration of his term, should have liberty to enter, cut and carry away his way-going crop, as it is called, that is, all the grain which he had sown, but which was not then yet ripe.* (a) And what can possibly be more reasonable? *Here leases are usually from year to year,* from April to April. Shall the lessee have, for his year, the benefit of the spring crop only and be deprived of the winter crop, which is by far the most important?

"It may be said that he ought to guard himself by covenants. It is true he may do so. *But still, the very essence of the contract is that he shall have one year's course of crops.* He pays a year's value, he bestows a year's labor, he must sow in its season or not at all, he must eat in the winter as well as in the summer. The very nature of the thing shows that he is to have the successive crops of the year. Shall the tenant be deprived, then, of the substantial benefits of his lease, unless he shall fortify himself with covenants of entry?

*"I have always understood the universal custom of the country to be otherwise,* as well as the course of decision in all of the courts. Indeed, the matter appeared to me to be so well settled that I was surprised to hear it even made a question."

In *Howell* v. *Schenck,* 24 *N. J. L.* 89, the same court reiterated the rule that a tenant of a term of one year had such right.

"Its object is to give the tenant the full benefit of the crops of the year of which he would otherwise be deprived as they do not ripen until after the expiration of his term.

"The rule does not apply to a spring crop, as of oats, which is regarded as the product of a second year, unless it is expressly provided for by the lease."

To like effect, *Corle* v. *Monkhouse,* 47 *N. J. Eq.* 73; 20 *Atl. Rep.* 367; compare, *DeBow* v. *Colfax,* 10 *N. J. L.* 128.

In *Reeves* v. *Hannan* (1900), 65 *N. J. L.* 249; 48 *Atl. Rep.* 1018, Mr. Justice Gummere, speaking for the Court of Errors and Appeals, had under consideration a lease for one year, from March 25th, 1895, later extended by express agreement for two years. He held, after finding that the tenant quit the farm at the expiration of his lease, leaving the winter crop standing thereon (*p.* 252):

"As to such crops it is entirely settled in this state that a tenant has a right, after the expiration of his term, to enter upon the demised premises, when the time for harvesting arrived, and cut and carry them away. *Van Doren* v. *Everitt,* 2 *South.* 460; *Howell* v. *Schenck,* 4 *Zab.* 89; *Corle* v. *Monkhouse,* 2 *Dick. Ch. Rep.* 73."

In *Cook* v. *Cook,* 83 *N. J. Eq.* 549; 90 *Atl. Rep.* 1045 (at *p.* 551), Vice-Chancellor Backes held on the authority of *Corle* v. *Monkhouse, supra,* "that a tenant of a farm land, whether for a term certain or uncertain, has a right after the expiration of his term, to enter upon the demised premises and cut and carry away all the grain which he has sown but which was not ripe when his term expired."

The rationale of *O'Leary* v. *Harris,* 89 *N. J. L.* 671; 99 *Atl. Rep.* 774, Court of Errors and Appeals (1916), in which no reference is made to the case of *Reeves* v. *Hanna, supra,* is not to the contrary. It merely decides that a voluntary surrender of a leasehold by the tenant destroys his right to emblements, although the court did, by way of *obiter dictum,* say that upon the termination of a lease by its own limitations in the absence of a special custom, there is no right of emblements. This pronouncement in the light of *Reeves* v. *Hanna, supra,* plus the existence of a "universal custom and therefore the settled law" in our state, *Van Doren* v. *Everitt, supra,* justifies, in our opinion, the conclusion that a tenant, unless he terminates his estate through his own fault or misconduct, has a right to emblements, or way-going crops, whether his term be certain or uncertain, to the end that he may have and enjoy the full benefit of his term, and no more.

*Second:* As between tenant and purchaser at execution *sales.* It is, of course, well settled that the rule of *caveat emptor* applies at a judicial sale; and "that the sheriff's deed passes the same title which a deed of bargain and sale executed by the judgment debtor would pass." *Brady* v. *Carteret Realty Co.,* 67 *N. J. Eq.* 641, 643; 60 *Atl. Rep.* 938. A conveyance of real estate either *by the owner or sheriff,* under a sale by judgment and execution, carries with it the growing crops as an incident, unless there be an express reservation in the deed. *Terhune* v. *Elberson,* 3 *N. J. L.* 297; *Bloom* v. *Welsh,* 27 *Id.* 177; *Cook* v. *Cook, supra.* But the purchaser of real estate takes subject to the doctrine of *caveat emptor* to the extent of the ordinary physical conditions of the property at the time of the purchase. *Buck* v. *Backarack,* 45 *N. J. Eq.* 557. Likewise, as stated by 3 *Freem. Exec.* 1972, § 344: "With respect to purchasers at execution sales, the general rule is, that they are bound by a notice which would bind a purchaser at a public sale; and not bound by a notice which would not bind such a purchaser." And the author continues in the same section: "The weight of authority recognized the bidder at such sales as a purchaser from the moment of the payment of his bid, and exonerates him, though before he has received, or becomes entitled to, a conveyance." See, also, *Herm. Exec.* 503, § 338.

*Third:* A conveyance to the defendants and their predecessors in title was, in effect, a conveyance of the term and reversion. Apart from the claim, if any, the plaintiff may have against his lessors, his leasehold and right to the crop was extinguished by conveyance to defendants and their predecessors in title, if they were purchasers for value, without notice. *Williams* v. *Young,* 78 *N. J. Eq.* 293; 81 *Atl. Rep.* 1118, Court of Errors and Appeals (1910). One claiming title by deed of conveyance, purporting to be for a valuable consideration, is presumed to be a *bona fide* purchaser for value, without notice. *Holmes* v. *Stout,* 10 *N. J. Eq.* 419; *Roll* v. *Rea,* 50 *N. J. L.* 264; 12 *Atl. Rep.* 905; *affirmed,* 57 *N. J. L.* 647; 32 *Atl. Rep.* 214. We think that defend-

ants and their predecessors in title were such purchasers. This precludes any claim or right by plaintiff to the crop. The lease, according to the theory of the parties, being for one year, was not required to be recorded under our statutes. (Section 21, Conveyance act, 1898; *Pamph. L.* 1917, *p.* 296.) Plaintiff admitted that he gave no express notice of his lease or claim to anyone until December of 1934, which was some time after the acquisition of title by the above named parties. Plaintiff, however, asserts that the defendants had constructive notice because of the alleged fact that he was in actual possession of the premises, which possession was notice to the world that he had or claimed rights therein. The testimony adduced by the plaintiff utterly fails to establish that quality of possession required by law in order to charge the new owners with knowledge of plaintiff's rights. The Fernwood Realty Company purchased, as already stated, at sheriff's sale on November 8th, 1934, for $450 and Beihl bought on November 23d, 1934. Plaintiff conceded that he lived on the farm only one day a week since March, 1934, and that neither he nor anyone else lived there at all during the months of September or October, 1934, or thereafter. Plaintiff was not in actual occupancy of the farm, nor did he show that he kept such equipment or live stock about the premises as to indicate to a person of reasonable circumspection that the premises were being occupied or used. The mere presence of a tractor in a shed, and an old harrow, which appeared not to be in use, and the fact that the rye (as to defendants) could be observed barely above the ground were not sufficient, under the proofs exhibited here, to charge a person so inspecting the premises with knowledge of occupation and user; it was not inconsistent with abandonment or surrender of the premises. The evidence submitted by the defendants indicated that the property was vacant, that nothing appeared to be in the buildings and that all the doors were locked with the exception of a back door, which was off its hinges. In fact, the Fernwood Realty Company paid a caretaker to watch the premises and to keep tramps and others out. The crop was sown broadcast, *i. e.*, strewn

by hand without first plowing the ground under. The sowing did not commence until September 28th, 1934, which was after the judgment against the Smires had been docketed. Thus, as to defendants' predecessors in title, the crop was not even visible; it was non-existent. For aught that appears, the farm was vacated, and any lease that may have been in existence was abandoned or surrendered. There was no one in the building or on the land from whom inquiry could be made or the facts determined.

Possession, in order to constitute notice, must meet a definite standard. In *Holmes* v. *Stout, supra,* Chief Justice Green, for the Court of Errors and Appeals, laid down the rule that "suspicion of notice is not sufficient. * * * The inference must be necessary and unquestionable. * * * Every possession will not amount to implied notice. It must be an actual and exclusive possession manifested by notorious acts of ownership, and such as would naturally be observed and known by others. Merely cutting wood, or pasturing cattle on unenclosed woodland, repairing the fences, and even removing an old house standing on part of the land, which may be regarded as mere acts of trespass as well as ownership, have been held insufficient. Nor does even actual open notorious possession of the land necessarily and in all cases create a presumption of notice. * * *." Judge Potts, writing a concurring opinion, in the same case, observed that "occasional acts * * * by pasturing cattle or removing fences, would not be sufficient, unless they were so far continuous that, if done by wrong under a claim of title, they would lose the character of mere trespasses, and acquire that of disseisin." In accord are *Hodges Executors* v. *Ammerman,* 40 *N. J. Eq.* 99; 2 *Atl. Rep.* 257; *Havens* v. *Bliss,* 26 *N. J. Eq.* 363; *Essex County National Bank* v. *Harrison,* 57 *Id.* 91; 40 *Atl. Rep.* 209; *Wood* v. *Price,* 79 *N. J. Eq.* 620; 81 *Atl. Rep.* 983. In the last cited case the court held:

"* * * possession of real estate which is actual, open and visible occupation, inconsistent with the title of the owner by the record and not equivocal, occasional or for a

temporary or special purpose, is constructive notice to all the world of the rights of the party in possession."

In the case of *Coleman* v. *Barklew,* 27 *N. J. L.* 357, the Supreme Court held on pages 359, 360:

"* * * It is well settled under the registry acts, that implied notice may be equally effective with direct and positive notice, and that possession by the grantee is, or may be constructive notice of the existence of a prior unregistered deed. But the possession must be actual, distinct, and unequivocal. It must, moreover, be visible, and manifested by notorious acts of ownership, such as would be naturally observed by others. * * * From November until after the entry of judgment, in February, there was no visible occupancy or possession of the property. This was not the visible, notorious, exclusive possession required by law to operate as constructive notice."

And in the case of *McCall* v. *Yard,* 11 *N. J. Eq.* 58, the court held (at *pp.* 62, 63):

"* * * But the purchaser must have notice of the possession before he is bound to inquire into the estate. * * * But if the possession is such as from its very character is not visible and of common report, and would not attract the attention of an observing man, then it is not such a possession as is calculated to provoke inquiry and put a party upon his diligence, and a *bona fide* purchaser ought not be concluded by it. * * *." *Feld* v. *Kantrowitz,* 98 *N. J. Eq.* 167; 130 *Atl. Rep.* 6; *affirmed,* 99 *N. J. Eq.* 847; 132 *Atl. Rep.* 657; *Clawans* v. *Ordway B. & L. Assn.,* 112 *N. J. Eq.* 280; 164 *Atl. Rep.* 267 (Court of Errors and Appeals).

The fact that plaintiff returned a month or more after Beihl had acquired title and had entered into possession, warning Morgan not to cut the crop of rye; or that plaintiff sold Beihl a tractor, does not aid plaintiff. For the then new owners' status, as innocent purchasers for value, is tested as of the day of the purchase of the farm by their predecessors in title at the execution sale. Moreover, when defendants, as here, hold title by virtue of a conveyance from an innocent purchaser for value without notice, they take free from outstanding claims even if they, themselves, had actual

or implied notice of such claim. The title of a *bona fide* purchaser is transmittable to his vendee, regardless of the latter's knowledge of the facts. *Paul* v. *Kerswell*, 60 *N. J. L.* 273; 37 *Atl. Rep.* 1102; *Holmes* v. *Stout, supra; Roll* v. *Rea, supra; McGrath* v. *Norcross*, 78 *N. J. Eq.* 120; 79 *Atl. Rep.* 85; *affirmed*, 82 *N. J. Eq.* 367; 91 *Atl. Rep.* 1069; *Henninger* v. *Heald*, 52 *N. J. Eq.* 431; 29 *Atl. Rep.* 190; *affirmed*, 53 *N. J. Eq.* 694; 35 *Atl. Rep.* 1130; *Dieckman* v. *Walser*, 112 *N. J. Eq.* 46; 163 *Atl. Rep.* 284; *affirmed*, 114 *N. J. Eq.* 382; 168 *Atl. Rep.* 582. Any other rule would restrict the innocent purchaser to selling to such persons who had no notice of the situation and would seriously affect the value of the title. *Dieckman* v. *Walser, supra.*

We do not, of course, review findings upon questions of fact beyond inquiry whether there was any legal evidence upon which the findings may be based. *Schnitzer* v. *Lanzara*, 115 *N. J. L.* 332; 180 *Atl. Rep.* 234. Nor do we review findings of fact based on conflicting evidence. But we do reverse a judgment for factual insufficiency; that is, where there is no legal evidence to support it. *Pollack* v. *New Jersey Bell Telephone Co.*, 116 *N. J. L.* 28; 181 *Atl. Rep.* 318, and cases therein cited.

The meager proof here utterly fails to meet the definite standard required by law to charge defendants with knowledge of plaintiff's right to the crop. We have not adopted the scintilla of evidence doctrine. *Schmid* v. *Haines.* 115 *N. J. L.* 271; 178 *Atl. Rep.* 801, 804; *Jedel* v. *Tapper*, 13 *N. J. Mis. R.* 809; 181 *Atl. Rep.* 400.

While no point is made of the fact that no motion for a direction of a verdict was made, we desire to mark that fact and make the added observation that it was not necessary to do so. The erroneous disposition of the case is sufficiently embodied within the *specification* of determinations. Chapter 62, *Pamph. L.* 1916, *p.* 109 (*Cum. Supp. Comp. Stat.* 1924, § 163-301); *Schnitzer* v. *Lanzara, supra; Pollack* v. *New Jersey Bell Telephone Co., supra.*

We find it unnecessary further to discuss the other points argued.

Judgment is reversed.