766 A.2d 1235 (2000)
337 N.J. Super. 381
AKC, INC., a New Jersey corporation, Plaintiff,
v.
JOEL OPATUT FAMILY TRUST; Opatut, L.P.; and H. Pluse, LLC., Defendants.
Superior Court of New Jersey, Chancery Division, Monmouth County.
Decided October 10, 2000.
*1236 Anthony J. Sposaro, Chester, attorney for plaintiff.
Maybruch & Zapcic, L.L.C., Hazlet (Stephanie Tolnai, appearing), attorneys for defendants.
FISHER, P.J.Ch.
Plaintiff AKC, Inc. ("the tenant") leased farmland for the purpose of planting and harvesting trees and nursery stock. Upon termination of the lease, defendants ("the landlord") obtained an order removing plaintiff from the leased property. The order, however, also compelled the tenant to diligently remove his trees and nursery *1237 stock from the property. The parties now dispute whether, or to what extent, the landlord should be compensated during this post-lease removal process.
For many years, the tenant leased approximately 40 acres on Route 79 in Freehold Township from the landlord. The last of their one year leases commenced on January 1, 1999 and ended on December 31, 1999. In October 1999, the landlord advised the tenant that the lease would not be renewed. The tenant, however, urged that the termination of the lease was somehow negated by its right of first refusal to lease this property and made no immediate effort to wind up its affairs at the site. Ultimately, on January 11, 2000, the landlord obtained an order of possession in the Special Civil Part; but that court also determined it lacked jurisdiction over the tenant's right to remove its trees and shrubs beyond the lease term. Accordingly, on February 22, 2000, the tenant filed this chancery action. Almost immediately, the parties consented to an order enjoining the landlord from interfering with the removal process, staying the issuance of a warrant of removal and compelling the tenant to forthwith act with due diligence in the removal of the trees from the landlord's property.
The tenant employed two to three crews of 10 to 12 men working 7 days a week regardless of weather conditions and by mid-April 2000 had removed approximately 12,000 trees and shrubs. As a result, approximately 32 of the 40 acres were cleared. Once the trees and shrubs began blooming in the Spring of 2000, they could no longer be safely removed but, with the onset of Fall, digging recommenced. The tenant now advises that the remainder of the trees and shrubs will be removed by the end of the calendar year 2000. The parties consented to another order which calls for the vacating of the earlier restraints at the end of the year. Despite the resolution of all those problems, there remains the landlord's claim for damages. By agreement, the matter has been submitted to the court for a ruling on the papers.[1]
The landlord urges a certain unfairness in the tenant's continuing use of the propertyalbeit for the purpose of removing treeswithout the payment of rent. The landlord thus seeks an award of damages (based upon a continuation of rent) until the trees are removed.[2] On the other hand, the tenant claims a legal right, notwithstanding the termination of the lease, to enter the property in order to harvest and remove its trees.
This lawsuit raises issues emanating from ancient property concepts not considered by our courts in many years, namely, the law of emblements. At the outset, it is helpful to consider that the principles which make up the law of emblements are exceptions to an even older legal precept that buildings, structures, and growing things are deemed part of the land upon which they reside. However, chancery courts long ago found the concept of "quicquid planataur solo, solo credit"[3] to be unjust. Those courts recognized that this concept prevented a *1238 tenant farmer from harvesting his crops after the termination of a lease and resulted in the granting to the landlord of a windfall. Consequently, the law of emblements arose and provided the tenant with a right to his crops and their removal after termination of a lease.
The principles of the law of emblements in New Jersey are not readily accessible without a look back many years in our jurisprudence. The most recent discussion on the subject appears in the 1936 decision of our former supreme court in Eckman v. Beihl, 116 N.J.L. 308, 184 A. 430 (Sup.Ct.1936). The facts of that case are quite distinguishable and need not be discussed herein. Unlike Eckman, the dispute here is not over the tenant's right to remove growing things which are ready to be harvested after termination of the lease but whether the tenant has any remaining obligation to the landlordeither for damages or rentwhile removing his crops after the termination of the lease. Nevertheless, Eckman's suggestion that resolution of such disputes must be "based upon two groundspublic policy and natural justice and equity" is a valid way to approach the contentions raised in this case. 116 N.J.L. at 312, 184 A. 430, quoting Francis Bros. v. Schallberger, 137 Or. 529, 537, 3 P.2d 530, 532, 83 A.L.R. 108, 112 (1931).
Of course, the invocation of "natural justice and equity," without further definition, only begs the question. What is just or equitable is often in the eyes of the beholder. But Eckman provides insight into what was meant. Again quoting from the Francis Bros. case, which reached as far back as Blackstone, the court in Eckman said:
Upon the first ground says Blackstone, "the encouragement of husbandry ... being a public benefit, tending to the increase and plenty of provisions, ought to have the utmost security and privilege that the law can give it." The second ground is based upon the principle "that the tenant is justly entitled to gather his crops, even though his term has expired, and without regard to the question whether such crops are to be considered as in the nature of personalty or realty."
Id. This strong policy in favor of allowing a farming tenant to gather his crops is tempered only by the longstanding notion that "the law of emblements is not applicable to one whose estate is terminated by his own act or default," id, a theory which comes into play, but only partially, in the present case.
The general approach outlined in Eckman has long been the law of this State, based upon a much older tradition in England. See, e.g., Van Doren v. Everitt, 5 N.J.L. 460, 532 (Sup.Ct.1819); Howell v. Schenck, 24 N.J.L. 89 (Sup.Ct.1853); Reeves v. Hannan, 65 N.J.L. 249, 252, 48 A. 1018 (E. & A.1901); Corle v. Monkhouse, 47 N.J.Eq. 73, 75-76, 20 A. 367 (Ch. 1890); Cook v. Cook, 83 N.J.Eq. 549, 551, 90 A. 1045 (Ch.1914).[4] The essential principles of the law of emblements in this State that come from these cases may be briefly summarized as permitting a tenant farmer to enter the land of another, after the termination of his lease, and cut and carry away his crops[5] unless his interest *1239 in the property has terminated through his own fault or misconduct. Despite that, the landlord here arguesif not for a distinct departure from this traditiona variation on the "fault or misconduct" feature as a means of generating an award of damages in its favor.
The landlord insists it should not have to tolerate the tenant's time-consuming removal of his trees and the tenant ought to be required to pay rent until all his property is removed. Perhaps it is true that there exists a lesser deference for farming now then existed at the time of the cases mentioned above. And it is equally disquieting to follow a legal doctrine simply because it can be found in certain aged cases.[6] On the other hand, the doctrines upon which the tenant relies continue to constitute binding precedent in this State and, thus, it is not for this lower court to disregard or ignore those precedents.
In any event, this court is satisfied that the law of emblements described by the older cases cited above not only is still binding upon the trial courts but also represents a salutary and equitable approach to the problem at hand. The parties engaged in many yearly leases[7] during which the tenant planted many thousands of trees and shrubs.[8] It had to have been understood by the parties that upon service of the notice to quit it would be practically impossible for the tenant to remove all trees and shrubs prior to the end of the lease term. As the record reveals, the tenant was given 3 months notice to quit the premises. Considering the extent of the trees and shrubs on the property, the landlord could not have reasonably or practically expected that the tenant would be able to remove all trees and shrubs before the end of the lease term on December 31, 1999.
Undoubtedly the parties could have covenanted in any way they wished to avoid the law of emblements described above. They did nothing other than leave the resolution of their present dispute to the *1240 common law doctrines described above. Their lease agreement is both remarkably brief and silent in regard to the present difficulties,[9] referring only to the tenant's right to "harvest his crop" in the event the landlord sold the property. Since the agreement also granted the tenant the "right of first refusal on all fields/lands named in this lease for the years 2000 and 2001 at the same price," the parties no doubt understood and recognizedand there is no evidence in the record to suggest otherwisethat the tenant expected to retain the right to emblements granted by the common law. It is true that, for the moment, the landlord has neither sold nor leased the land to another. But the stated right of the tenant to "harvest his crop" is guaranteed by the landlord's termination of the lease in order to sell the property. There being nothing to the contrary in the parties' agreement, the issue must turn on the common law principles described earlier.
The tenant, of course, is entitled to remove his crops. In fact, the parties previously consented to the entry of an order that permitted the tenant to do just that without interference from the landlord. While this process may be taking longer than the landlord would have preferred, there is nothing in the record to suggest the tenant is not moving with all deliberate speed and, again, if the landlord desired something quicker provision could have been made in the lease agreement. But the question is whether the landlord should be compensated for the continued, albeit truncated use, the tenant is making of the property and, as to that, the lease agreement is also silent.
As mentioned above, the tenant's common law right to enter the leased property and remove crops is tempered only if the termination of the lease has been brought about through his own fault or misconduct.[10] The only suggestion of fault or misconduct lies with the fact that the tenant did not immediately commence removing his trees and shrubs upon receiving the notice to quit. Rather, the tenant urged his right of first refusal as a basis for taking no action, which he later recognized applied only to any attempt by the landlord to leasenot sellto another. This incorrect assertion of the right of first refusal required the landlord to commence a tenancy action in the Special Civil Part and delayed the tree removal process for a period of approximately three months. As a result, these undisputed facts implicate, to some degree, the "fault or misconduct" concept discussed earlier.
This court finds it would not be equitable for the tenant's delay to completely eliminate the right to remove his shrubs and trees[11] any more than it would be equitable to allow a delay in the removal process to go unredressed. Considering that the applicable doctrines are based *1241 upon "natural justice and equity," it would be unnatural, unjust and inequitable to simply ignore the tenant's delay in removing himself from the premises for that period of time.[12] After termination of a lease, a tenant of farm land is required to remove his crops with all deliberate speed. When he fails to so act, an award of damages may rightfully issue to compensate the landlord for the delay. In such circumstances, the court should craft a remedy which recognizes both the tenant's right to his emblements, the injury to the landlord caused by the tenant's delay, and the diligence with which removal has commenced and proceeded. In this case, the court finds from the undisputed facts that the tenant delayed in commencing the removal process for three months after receiving notice to quit the premises upon a mistaken interpretation of his right of first refusal. Accordingly, the landlord should be compensated for that delay and will be awarded damages the equivalent of the rent that would have been paid for the tenant's three month period of inertia, namely, $3,750.[13] Judgment will be entered in that amount without interest and without costs to either party.[14]
NOTES
[1] The parties have acknowledged there are no factual questions in dispute and their contentions may be resolved as a matter of law.
[2] The landlord also seeks double damages on the theory that the tenant is wrongfully holding over after the expiration of the lease. See, N.J.S.A. 2A:42-6, which states: "When a tenant for any term or any other person coming into possession of any real estate by, from or under, or by collusion with such tenant, willfully holds over any such real estate after the determination of such term and after demand made and notice in writing for delivering the possession thereof, given by his landlord or lessor, or by the person to whom the remainder or reversion of such real estate shall belong, the person so holding over shall, for and during the time he so holds over or keeps the person entitled out of possession of such real estate pay to the person so kept out of possession, his executors, administrators or assigns, at the rate of double the yearly value of the real estate so detained, for so long a time as the same is detained. Such amount shall be recoverable by an action in any court of competent jurisdiction."
[3] "All growing things pass with a conveyance of the land upon which they are planted."
[4] In Van Doren, Chief Justice Kirkpatrick said that "[i]n this state I have always understood it to be the universal custom, and therefore the settled law, that the tenant, after the expiration of his term, should have liberty to enter, cut, and carry away his way-going crop as it is called, that is all the grain which he had sown, but which was not then yet ripe.... And what can possibly be more reasonable." 5 N.J.L. at 532.
[5] The aged but existing decisional law of this State indicates that the tenant has a right to remove his emblements notwithstanding whether the lease is for an indefinite term. See, e.g., Cook, supra, 83 N.J.Eq. at 551, 90 A. 1045, where Vice-Chancellor Backes said that the tenant's right to enter upon the leased premises to remove his crops applies whether the lease term is "certain or uncertain." This appears to be a departure from the majority rule in this country. One commentator said, "a tenant for years will not be entitled to emblements because the termination of the lease is certain and he can take measures accordingly." 2 Powell on Real Property § 18.01[7] at page 18-23. That approach has venerable origins, being described by Littleton in the following way: "if the lessee soweth the land, and the lessor, after it is sown and before the corn is ripe, put him out, yet the lessee shall have free entry egresse and regresse to cut and carry away the corne, because he knew not at what time the lessor would enter upon him. Otherwise it is if tenant for yeares, which knoweth the end of his terme doth sow the land, and his term endeth before the corn is ripe. In this case the lessor, or he in the reversion, shall have the corn, because the lessee knew the certainty of his terme, and when it would end." American Law of Property (1952), Vol. V, § 19.16 at 68 n. 28. While New Jersey's different approach is interesting, it is not implicated here, since the lease in question was for a period of one year and the law of emblements is applicable even in the jurisdictions which put the tenant to the higher standard described by Littleton. See, Powell, supra, at 18-23 to 18-24 ("A tenant from year to year, however, would be entitled to emblements when the tenancy is terminated by notice, but the crops were sown prior to receipt of the notice").
[6] As Justice Holmes said, "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Holmes, "Path of the Law," 10 Harv. L.Rev. 457, 469 (1897). But this particular rule seems well grounded in reason, even in current times where farms are rapidly vanishing in this vicinage. It seems utterly inequitable, without some specific agreement from the parties, to say that the minute a leasehold is over, the landlord is entitled to reclaim his lands and all the crops upon it. In this case, the landlord could have helped himself to over 12,000 trees and shrubs but for the law of emblements as long ago declared. While the landlord forcefully argues for some limited relief from what these principles suggest, he has not and cannot persuade that the existing law, albeit aged, ought to be completely rejected.
[7] The tenant alleges, without contradiction, that it (or companies controlled by the plaintiff's principal shareholder) have leased the property since 1992. Verified Complaint, ¶ 6.
[8] As noted above, the tenant has removed over 12,000 trees and shrubs on 32 of the 40 acres leased in the last year. Mathematical extrapolation would suggest that there were 15,000 trees and shrubs on the entire 40 acre tract that was leased.
[9] In this court's experience, such abbreviated lease agreements are not uncommon in the farm industry.
[10] The landlord contends that the continued presence of the tenant on the property interferes with his right to sell the property. But, at oral argument, it was conceded that the tenant, while removing his trees, has not hampered the marketing of the property. And while it is nevertheless argued that the property cannot be sold while the tree removal process continues, there is no proof in this record that a contract of sale has been entered into or that negotiations have been disturbed.
[11] The landlord has also argued that the doctrines urged by the tenant are inapplicable because the tenant planted trees and shrubs on the property and not crops. The matter, however, is one of intention. By their own course of conduct, the parties recognized the tenant was to use the property for the purpose of planting and growing trees and shrubs for sale and that he would be permitted to harvest them when the lease ended. Moreover, the better approach (notwithstanding the existence of case law which draws some distinction between "fructus industriales" and "fructus naturales") is to recognize that a farmer of nursery stock is entitled to the same rights as farmers who grow corn, wheat or other such crops. See, e.g., Story v. Christin, 14 Cal.2d 592, 95 P.2d 925, 125 A.L.R. 1402 (1939).
[12] The parties have cited out of state cases which could be argued as supporting their positions. Those decisions need not be reviewed and distinguished. It is the reason and spirit of prior decisions, and not their precise wording, which make up the common law. This court is satisfied that the result reached herein is in keeping with the spirit of the law of emblements which has long existed in this State notwithstanding the fact that no particular precedent can be found to support or reject that result.
[13] An award of "double damages" for this time periodas urged by the landlord would be punitive and, for that reason, is rejected.
[14] The landlord also seeks the replacement of any soil removed by the tenant in removing his crops. That contention is inconsistent with the law of emblements. Whatever use of the land and air has occurred through the husbandry of these shrubs and trees becomes part of what the tenant may take away. In addition, the only evidence on the subject, which comes from the certification of an expert in the field, is that the obligation of a departing tenant is to "plow and disc fields that have been utilized to grow trees and shrubs after they have matured sufficiently and can be safely removed." Flemer Certification, ¶ 3. The tenant has stated that he will consent to the entry of a judgment which requires the elimination of any large impressions in the ground caused by the removal of trees. Such a direction is sufficient to address the landlord's concerns.